JOHN A. TURNER, Respondent, *v.* W. C. THOMAS, Appellant.

May 17, 1881.

1. Where W. C. T., being sued by the payee upon a note signed " W. C. T., President M. C. & C. Co.," interposes a plea of *non est factum*, and the court excludes all evidence that the note is not the obligation of W. C. T., but of the company, a refusal to permit an amendment of the answer is not a sound exercise of judicial discretion.

2. *Semble* that, under such a plea in such a case such evidence is admissible.

APPEAL from the St. Louis Circuit Court, BOYLE, J. *Reversed and remanded.*

T. J. PORTIS, E. A. ANDREWS, and H. D. WOOD, for the appellant : Where a written contract, not under seal, is executed by an agent, it is not necessary in order to bind the principal that it should be executed in the name and as the act of the principal : it will be sufficient if from the whole instrument it can be gathered from the terms thereof that the party describes himself and acts as agent, and intends thereby to bind the principal and not himself. — *Klosterman* v. *Loos*, 58 Mo. 293 ; *Ferris* v. *Thaw*, 5 Mo. App. 280 ; *Musser* v. *Johnson*, 42 Mo. 74 ; *McClellan* v. *Reynolds*, 49 Mo. 312 ; *Washington Ins. Co.* v. *Seminary*, 52 Mo. 480.   The addition of the official character of the signer is not regarded as a description of the person.   The more rational as well as the more generally prevalent doctrine and liberal policy now is, of allowing the intent of the parties to govern, however inartificially the instrument is expressed. — *Smith* v. *Alexander*, 31 Mo. 193 ; *Schuetze* v. *Bailey*, 40 Mo. 69 ; *Dispatch Line* v. *Bellamy Man. Co.* 12 N. H. 206 ; *Means* v. *Swormstedt*, 32 Ind. 87 ; *Carpenter* v. *Farnsworth*, 106 Mass. 561.

W. P. JOHNSON, JOHN A. HARRISON, and S. HERMANN, for the respondent : " The plea of *non est factum* denies that the deed mentioned in the declaration is the deed of defendant.   Under this, the defendant may controvert at

the trial that the deed was ever executed in point of fact, but he cannot, under this plea, deny its validity in point of law." — Stephens on Pl. 158, 159. The validity in point of law should form the subject of a special allegation, showing the circumstances under which the illegality is supposed to arise. — *Ibid.*, citing the following cases: *Williams* v. *Bryant*, 5 Mee. & W. 447; *North* v. *Wakefield*, 13 Q. B. 536; *Scott* v. *Smith*, 12 Mee. & W. 688. No new matter constituting a defence is admissible under the general denial, or a specific denial of the allegations of the petition. — *Livingston* v. *Finkle*, 8 How. Pr. 486; *Stoddard* v. *Conferma*, 12 Barb. 575; *Russell* v. *Whiteley*, 59 Mo. 196; *Dunning* v. *Rumbaugh*, 36 Iowa, 566; *Blakeley* v. *Binnicke*, 59 Mo. 193.

BAKEWELL, J., delivered the opinion of the court.

This is an action by payee against maker, upon two negotiable promissory notes, one payable in ninety days and the other in six months after date. Each note is payable to the order of John A. Turner, and is signed "W. C. Thomas, Pres. Moniteau Coal & Coke Co." The answer of defendant is verified by his affidavit. It denies that either of the notes "are or ever were his notes, acts, or deeds, or that he executed said notes, or either of them, as his notes, acts, or deeds." The answer further denies that defendant owes or ever did owe to plaintiff the sum mentioned in the note, or any sum whatever.

On the trial, plaintiff testified in his own behalf that he saw defendant sign the notes. On cross-examination, he stated that the notes were in his handwriting. On cross-examination, plaintiff was asked whether the notes were not signed in the office of the Moniteau Coal and Coke Company; whether defendant was not president, and plaintiff treasurer and secretary, of that company at the time; whether the notes were not signed for an indebtedness of the company to plaintiff for services rendered by plaintiff to the

company; whether the notes were not executed and delivered by defendant to plaintiff, and accepted by plaintiff, as the notes of the company, and not as the notes of defendant; whether defendant ever owed plaintiff anything on any account; whether plaintiff did not write the notes himself, and request defendant to sign them as president, for a debt due by the company to plaintiff; whether this was not done at the instance of plaintiff, and the notes accepted as the notes of the company and not as the notes of defendant; whether a certain credit on one of the notes was not for money paid by the company. On the objection of plaintiff, defendant was not allowed to answer any of these questions, on the ground that there was no ambiguity about the notes to render any oral explanation competent.

Plaintiff then offered the notes in evidence, and closed his case. Defendant offered an instruction in the nature of a demurrer to the evidence, which was overruled. Defendant then asked permission to file an amended answer setting forth that "at the time of the execution of the notes sued on, the Moniteau Coal and Coke Company was a corporation duly organized under the laws of Missouri; that plaintiff was the secretary and treasurer of said corporation, and defendant president thereof; that defendant executed both the notes sued on as president and in behalf of said corporation, and not in his individual capacity; that plaintiff well knew at the time said notes were executed, and when plaintiff received the same, that said notes were the obligations of said corporation, and not of this defendant; that defendant never received any part of the consideration in his individual capacity; and that the notes sued on are not the notes or obligations of defendant." This answer was verified by affidavit. But the court refused to permit it to be filed.

Defendant then offered in evidence the certificate of incorporation of the Moniteau Coal and Coke Company, which was excluded by the court. Defendant recalled plaintiff

and offered to prove by plaintiff that a certain account-book was the account-book of the company, kept by plaintiff as secretary and treasurer, in his own handwriting; that in this book plaintiff entered all money transactions of the plaintiff; that amongst other entries by plaintiff in this book, is the following, under the head "Sundries to Bills Payable:" "J. A. Turner, one note in his favor, due May 20–23, $574.10; one note in his favor, due Aug. 18–21, $574.10; one note in his favor, due Oct. 17–20, $574.10;" that, under the head "Bills Payable," in this book, are these entries: "A. A. Talmage's note exchanged for our note to J. A. Turner, due Oct. 17–20, for $574.10, and part payment on our note due Aug. 18–21, $225.90;" that the first two notes mentioned in the entry are the notes sued on, and that the credit mentioned as made on "our note" is the credit appearing on the back of the note in suit; that the notes sued on were for a debt due by the company to plaintiff, and that plaintiff wrote and accepted said notes of the company; and that plaintiff, whose duty it was to keep the books of the company, entered these notes in said books as the notes of the company and as bills payable of the company; that Turner received from the corporation, as its treasurer, the consideration for which the notes were given; that defendant executed both notes as president of the company, and solely for its benefit; that plaintiff wrote both notes himself, and requested defendant to sign them as president. All this testimony was excluded by the court. The court then refused to allow defendant to testify, on his own behalf, that he knew nothing of the circumstances under which the notes were given, and received no consideration for them; and that he signed the notes as president of the company, at Turner's request, in order that Turner might have evidence of the indebtedness of the company to him.

The court sitting as a jury then found for plaintiff, and judgment was rendered accordingly.

That there was an ambiguity on the face of the notes

sued on, and that in a proper state of the pleadings, oral testimony would have been admissible to explain whether the instruments were the contracts of the company by Thomas as its president, or of Thomas himself, there can be no doubt in view of the rulings in Missouri. *Smith* v. *Alexander*, 31 Mo. 193; *Klosterman* v. *Loos*, 58 Mo. 290; *Washington Ins. Co.* v. *Seminary*, 52 Mo. 480; *McClelland* v. *Reynolds*, 49 Mo. 312; 40 Mo. 69; 42 Mo. 74; *Ferris* v. *Shaw*, 5 Mo. App. 279.

Evidence which would have been admissible under the general issue in common-law pleadings may be incompetent under a general denial in the new system. Evidence that confesses the original liability and is matter in avoidance, is not admitted under a general denial, under the Code system, though it was largely admitted under the old general issue. Facts that support the denial need not, however, as a general rule, be specially pleaded under our system; the rule being that new facts that show that plaintiff's statements are untrue may be proved under a denial, but that facts consistent with the truth of plaintiff's statements, but which show that he has, nevertheless, no cause of action, are new matter to be pleaded. What is apparently new matter may be admissible under a general denial where the facts constituting new matter do not confess and avoid, but tend to disprove the allegations of plaintiff.

The difficulty is in the application of the rule. Fraud, as a defence, is usually held to avoid the legal effect of the facts alleged by plaintiff, and not to be provable under a general denial. But in Missouri it is held that fraud in procuring the execution of a note may be proved under a mere denial. *Corby* v. *Weddle*, 57 Mo. 452. And in *Greenway* v. *James*, 34 Mo. 328, the rule is broadly laid down: " Where a cause of action which once existed has been determined by new matter which subsequently transpired, such new matter must, to comply with the statute, be specially pleaded; but where the cause of action alleged

never existed, the appropriate defence under the law is a denial of the material allegations of the petition ; and such facts as tend to disprove the controverted allegations are pertinent to the issue.''

The defendant in his answer denied that he executed the notes as his notes, or as his act and deed, and he denied that they were his notes. We are by no means clear that any more specific allegations were necessary to let in the testimony that was rejected. Nor can we suppose, seeing that the action was payee against maker, and looking at the signature to the notes, that plaintiffs were misled by the answer, or left in doubt as to the purpose of the pleader to put in issue the fact that the notes were given by him, or accepted by plaintiff, as defendant's notes, and not as the notes of the company. But when defendant, on ascertaining the view of the learned judge of the trial court as to the meaning and effect of his plea, offered to amend, we think that he should have been allowed to do so upon such terms as might seem proper to the trial court under the circumstances of the case. Had plaintiff claimed a surprise, the cause might have been laid over to a further day in term, or it might have been continued. We see nothing to raise any suspicion of bad faith on defendant's part in the application. And the refusal to allow an amendment, and the exclusion of all defendant's testimony, upon a question of pleading as to which there was fair room for controversy, was not, in our opinion, a sound exercise of discretion. The allowance of amendments is largely discretionary ; but where it is apparent that the refusal of the amendment may lead to the perpetration of an injustice under the forms of law, and the granting of the amendment on terms can do no wrong ; and where, from the character of the original pleading, and of the proposed amendment, it seems that defendant desired to raise by his first pleading the issue which he would make plain by his amendment, and, at most, there

has been a misapprehension of the legal effect under the new procedure of the language of the original answer, and there seems to have been no want of good faith, we think that a refusal to allow the amendment is a proper matter for review.

It is true that delay operates frequently a serious hardship, and speedy justice is a primary object of judicial proceedings. The courts, no doubt, should not allow the course of justice to be trifled with, and a cause is not forever open to new pleadings and new issues. If it were clear that the only proper course of defence in this case was a specific answer, we should think it our duty to affirm the judgment; but whilst we believe that the answer offered as an amendment was more in accordance with the spirit of the Code, as giving fuller notice of the defence to be set up on the trial, we do not regard it as settled, either by reason or authority, that the evidence offered in this case and excluded, so far as it was competent at all, was not competent under the original answer.

We therefore think it our duty to reverse and remand the cause. All the judges concur.