## JONES, Appellant, v. RUSH et al.

### Division One, May 15, 1900.

1. **Practice: EXCEPTIONS.** The bill of exceptions, and not the record proper, should contain the exceptions that are taken and preserved during the progress of a trial.

2. **Pleading: GENERAL DENIAL.** A defendant is required to plead affirmatively only matters in the nature of confession and avoidance. Under a general denial any legal evidence is admissible which tends to show that the allegations contained in the petition are not true.

3. **Equity: DEED: MORTGAGE: EVIDENCE.** In order that a court of equity may declare a deed absolute on its face to be a mortgage, the evidence must be clear, cogent and convincing, and must comport with all the facts and circumstances surrounding the transaction.

4. **Vendor's Lien: INDEPENDENT SECURITY.** A vendor's lien arises by implication of law out of the sale of land, and exists in favor of the grantor against the grantee as a security for the unpaid purchase money otherwise unsecured. But no such lien is implied if at the time of the sale other security is given.

Appeal from Macon Circuit Court.—*Hon. Andrew Ellison,*
Judge.

AFFIRMED.

*Dysart & Mitchell* for appellant.

(1) A deed absolute upon its face, intended by the
parties to be security for the payment of money, will, in
equity, be treated as a mortgage. And such intent may be
shown by parol evidence. This proposition is elementary,
and the decisions are numerous, a few of which are here
cited: Book v. Beasly, 138 Mo. 455; Cobb v. Day, 106 Mo.
278; O'Neill v. Capelle, 62 Mo. 202; Hargadine v. Hender-
son, 97 Mo. 375. (2) An attempt by either party to deny
the trust character of such an instrument, and to establish
it as a deed absolute, will be treated in equity as a fraud upon
the rights of the other party. O'Neill v. Capelle, *supra.*
(3) In passing upon the question whether or not a deed was
intended as security, the court will consider all the facts and
surrounding circumstances, and if a doubt exists as to
whether it was a mortgage or a sale, the doubt will be
resolved in favor of the mortgage. Desloge v. Ranger, 7
Mo. 327; Brant v. Robertson, 16 Mo. 129; Turner v. Kerr,
44 Mo. 432. (4) While the burden of proof is ordinarily
on the person alleging the absolute deed to be a mortgage,
yet it is otherwise where the transaction had its inception in
an application for a loan. Cobb v. Day, 106 Mo. 278. (5)
The consideration paid for the farm, upon defendant's
theory, is enough to excite grave suspicion. While inade-
quacy of price, as a general rule, is not of itself sufficient to
establish fraud, or show that a deed was accepted as security,
yet if accompanied by misrepresentation, undue advantage,
ignorance of one of the parties in regard to values, etc.,
equity will grant relief, defensive or affirmative. Cobb v.

Day, 106 Mo. 279. (6) When the defendants pleaded the contract, it was competent for the plaintiff to attack it, and show its want or failure of consideration, in whole or in part, and also the intent and purpose thereof. R. S. 1889, sec. 645.

*R. H. Kern, Ben Eli Guthrie, Ben Franklin* and *Sam S. Dunham* for respondents.

(1) The record proper shows no exceptions saved to the actions of the court in overruling the motion for a new trial. Appellant attempts to bridge this neglect by saving it in his bill of exceptions. Exceptions are to be noted at the time. There is no place to note such an exception except in the record proper where the action of the court is recorded. There being no exceptions saved to the overruling of the motion for a new trial, there is nothing for review in this court except the record proper. The record proper is sufficient to sustain the judgment. St. Louis v. Brooks, 107 Mo. 380. (2) Plaintiff's action is to enforce a vendor's lien. The bar pleaded is a contract showing that the purchase price is fully paid. The reply assails a deed given by defendant to plaintiff on the ground that it was intended as a mortgage and prays that it be so declared. This constitutes a departure; and plaintiff now seeks to recover on the allegations of his reply and not his petition. This can not be done. McMahill v. Jenkins, 69 Mo. App. 279; Mohney v. Reed, 40 Mo. App. 99; Hill v. Mining Co., 119 Mo. 9; Story's Eq. Pl., p. 731; Lanitz v. King, 93 Mo. 513. (3) The doctrine of declaring a deed a mortgage is the practice of an equity court invented to prevent the grantor being cut off from his right of redemption. It is to protect his interest and his alone. Such doctrine can not be applied to a grantee. 2 Washburn's Law of Real Property (3 Ed.), sec. 487, p. 56.

(4) Before a deed absolute on its face can be declared a mortgage in the interest of any party, the evidence must be clear, cogent and convincing and must comport with all the facts and circumstances surrounding the transaction. There is no such evidence in this record. Worley v. Dryden, 57 Mo. 226; Quick v. Turner, 26 Mo. App. 29; Eystra v. Capelle, 61 Mo. 578; 1 Jones on Mort., sec. 335; Holmes v. Fresh, 9 Mo. 201; Ringo v. Richardson, 53 Mo. 385; Forrester v. Moore, 77 Mo. 651; Robb v. Wolff, 148 Mo. 335. (5) This is a direct attempt to vary the meaning of a written contract by parol evidence and to change the legal effect of such written contract. This can not be done and the whole evidence is wholly inadmissible because the legal effect of a contract is as much within the rule as its terms. Sickle v. Iron Co., 10 Mo. App. 241; s. c., 84 Mo. 161; Tracey v. Iron Works, 104 Mo. 193. (6) It is evident that the defendants never understood their deed for the Illinois property was a mortgage. Even the Joneses do not claim that. They merely say that it was what they talked about before they made the contract. But with the contract written as it is and the whole transaction taken together, it is clear that the defendants never intended it to be a mortgage. Robinson v. Sipple, 129 Mo. 208; Field v. Invest. Co., 123 Mo. 603. Now can the plaintiffs reform the contract so as to make it valid as to the part they want and invalid as to the part they do not like? That is not equity. Estes v. Reynolds, 75 Mo. 563; Brockhaus v. Schilling, 52 Mo. App. 73. (7) The taking of a security waives a lien unless there be an express intention made clear to retain the lien notwithstanding the security, and there is no intimation of that kind in this record. Winn v. Invest. Co., 125 Mo. 528; Emison v. Whittlesey, 55 Mo. 254; Brown v. Barrett, 75 Mo. 275; Anderson v. Griffith, 66 Mo. 44; Sullivan v. Ferguson, 40 Mo. 79; Durette v. Briggs, 47 Mo. 356.

VALLIANT, J.—This is a suit in equity to foreclose a vendor's lien.

The petition states that in May, 1894, plaintiff conveyed 280 acres of land, describing it, in Macon county to defendant, Eva M. Rush, and gave her possession thereof, which she still retains; that the consideration of the conveyance was $4,500, of which defendant paid $1,500, and still owes plaintiff $3,000, for which he is entitled to a vendor's lien. The prayer is for a foreclosure sale to satisfy the vendor's lien and general relief.

The answer admits the purchase of the land but denies that the consideration was $4,500 and avers that the transaction originated in a written contract dated November 8, 1893, which is to the effect that plaintiff and wife agree to convey by deed to defendant Eva M. Rush the land in question on May 1, 1894, and defendant agrees to pay plaintiff, thereupon, $1,500 in cash and deed to him certain lots in Du Page county, Illinois, and stipulating also conditions for deferring the consummation of the transaction until October, 1894, upon certain contingencies named, which it is unnecessary here to repeat. Then the answer goes on to aver that in accordance with that contract the sale was consummated in May, 1894, the plaintiff and wife deeded the Macon county land to defendant, Eva M. Rush, and she, or her husband for her, paying plaintiff the $1,500 required and conveying by proper deed to him the Illinois lots.

Plaintiff by reply admits the execution of contract of November 8th, 1893, and the conveyance to him of the Illinois lots as therein required, but avers that it was understood and agreed between him and defendants that the deed to the Illinois lots though in form an absolute deed yet should be considered only as a mortgage for the $3,000 deferred payment and that in taking that security plaintiff was imposed on and deceived by the false representation of

defendants to the effect that the Illinois lots were worth $5,000, whereas in fact they turned out to be not more than $200 in value; that it was agreed between them that defendants should act as agents for plaintiff and sell the Illinois lots and out of the proceeds pay him the $3,000 balance of the purchase money of the Macon county land; and plaintiff in his reply offered to reconvey the Illinois lots to defendants.

The plaintiff's evidence tended to show that the transaction was consummated in compliance with the written agreement of November 8, 1893, that is that in May, 1894, or about that time plaintiff conveyed by deed the Macon county land to defendant Eva M. Rush and received in return the $1,500 and the deed to the Illinois lots; that at the time the agreement was made, November 8, 1893, plaintiff had never seen the Illinois lots and had no information of them except that derived from defendant, W. I. Rush, who represented them to be worth from $4,000 to $5,000 and expected to be able to sell them for the latter sum within six months and was sure he could do so in two years; plaintiff in writing appointed him his agent to sell the lots, agreeing to give him for his fee all over $3,000 realized on the sale to be made; in May, 1894, when the deeds were exchanged plaintiff had made no further inquiry into the value or condition of the Illinois lots nor did he attempt to find out anything about them until November, 1895, when he caused inquiry to be made and ascertaining that they were of only trifling value. The oral testimony for plaintiff also tended to show that the price agreed on for the Macon county land was $4,500, which was the consideration expressed in the deed and that the deed to the Illinois lots was taken only as security for the $3,000 deferred payment. The testimony on that point will be referred to more in detail hereinafter. As to the value of the Macon county land the plaintiff's testimony was that it was worth $10 to $15 an acre.

The testimony on the part of defendant tended to show

that there was no other agreement between the parties than that expressed on the face of the papers; that is, that defendants agreed to give $1,500 and the Illinois lots in full payment for the Macon county land, that there was no understanding that the deed to the Illinois lots was to be taken to be a mortgage, and that no misrepresentation was made as to the value of these lots. As to the value of the Macon county land the testimony ranged from $750 the assessed value up to $10 or $12 an acre.

The court found "the Illinois property was worth at the time, not to exceed $400 cash, and the 280 acres well worth $3,000 cash, that is $1,500 less than the consideration expressed in the deed and $1,200 more than the plaintiff received in cash ($1,500) and $400 value of the Illinois property; in other words plaintiff receives $1,900 for $3,000 worth of property, losing thereby about $1,100 in the deal." The learned trial judge in his written opinion on file, said: "The plaintiff in this case is an educated gentleman, and understanding and using perfect English, must be presumed to possess ordinary prudence and caution. Why this plaintiff and his brother suffered themselves to be deceived as to the value of the Illinois property is one of those strange happenings that occur too often, yet the courts refuse relief, when, as in this case, ample opportunity was afforded and was actually at hand for them to have ascertained the very truth, two of their neighbors having just before purchased of this defendant similar property in and near this same block."

There was a finding and decree for defendants, motion for new trial which was overruled, and appeal by plaintiff.

I. Respondent insists at the threshold that there is nothing *in pais* to review because the record proper does not show that plaintiff excepted to the ruling on his motion for a new trial. The record proper does not so show but the bill of exceptions does, and that is correct. Exceptions should

not be contained in the record proper, it is the office of the bill of exceptions alone to show the exceptions that are taken and preserved during the progress of the case.

II. The pleadings in this case contain a good deal of matter that is merely evidentiary. The petition is in effect simply a bill to foreclose a vendor's lien alleging a sale of the land for $4,500 of which $1,500 was paid leaving $3,000 unpaid for which a decree of foreclosure is prayed. If the defendants had filed only a general denial they could, under it, have introduced all the evidence they did introduce tending to show that the transaction was not as stated in the petition. Under a general denial any legal evidence is admissible which tends to show that the statements in the petition constituting the plaintiff's cause of action are not true, and to that end he may affirmatively show facts inconsistent with the plaintiff's statements tending to prove them to be false. [Turner v. Thomas, 10 Mo. App. 338; Sargent v. Railroad, 114 Mo. 348.]

A defendant is required to plead affirmatively only matters in the nature of confession and avoidance, that is, matters which, though the statements in the petition may be true, would nevertheless defeat the action, as for example, release, payment, accord and satisfaction, etc.

If the facts set up in the answer had been in the nature of a plea of confession and avoidance it would have been competent for the plaintiff to meet them in his reply as he has done, seeking thereby to obtain affirmative equitable relief against the deeds so pleaded in avoidance. [Courtney v. Blackwell, 150 Mo. 245.]

But the defense in this case is not in the nature of a confession and avoidance; it is a denial of the transaction as pleaded in the petition. True it is equivalent to pleading a payment of what the answer says was the real consideration, but it is not a plea of payment of the consideration stated in the petition; it is a denial that that was the consid-

eration. There was therefore no necessity and no authority for setting up affirmatively the matters contained in the answer. Those matters were simply evidentiary in character, neither requiring nor justifying a reply (State ex rel. v. Rau, 93 Mo. 126), and their injection into the answer has had the effect only to lead to a confession in the pleadings, for the plaintiff has undertaken to build upon it his affirmative reply seeking to change the character of the deed to the Illinois lots. Respondents insist that that is a departure in the plaintiff's pleading.

If the defendants had contented themselves with a general denial (and we have seen that if we strike out of the answer all that is merely a recital of evidence, there is nothing of it left but a general denial), there would have been no foundation for the reply and the plaintiff would have been compelled to stand on his petition alone, which was not sufficient to justify the admission of evidence of the kind he did introduce seeking to convert the absolute deed into a mortgage.

But for this uncertainty and confession in the pleadings the respondents are as much responsible as appellant and are not in position now to take advantage of it. The trial court with the apparent concurrence of both parties took the petition and reply together as constituting the statement of the plaintiff's cause of action and tried the case in that way, therefore if the appellant has just cause to complain of the result of the trial he should not be shut out on account of the condition of the pleadings.

III. A vendor's lien is not the result of a direct contract therefor; it arises by implication of law out of the sale of land and exists in favor of the grantor against the grantee as a security for what remains of the purchase money unpaid and otherwise unsecured. But if at the time of the sale other security is given the law will not imply a lien on the land sold. [Pomeroy's Eq. Jurp., 1250, 1252.]

According to the pleadings of the plaintiff, when he sold this land he took from the grantee a mortgage on the Illinois property to secure the deferred payment. The respondents insist that the act prevents a vendor's lien from arising and is conclusive against the plaintiff's claim. That would undoubtedly be the effect of taking the mortgage if the fact is not as contended by the plaintiff that he was induced to take it by the fraud of the defendants. If the plaintiff was induced by the fraud of the defendants to take the deed to the Illinois lots he is entitled to relief provided he has been himself free from blame, because the fraud would render the act void.

The only evidence adduced to support the charge of fraud is that of plaintiff and Robert and Edward Jones to the effect that defendant W. I. Rush told them that the Illinois property was worth $4,000 to $5,000 against which is the testimony of Rush that he made no such representation, but did tell them of contemplated public improvements and enterprises that were talked of and which if carried out would make the lots very valuable, and there is no proof that his representations in that respect were not true. Two of plaintiff's neighbors owned lots in the same village adjoining these, and he knew it.

Plaintiff also had a brother-in-law living in Chicago engaged in the real estate business, who knew this property and to whom plaintiff ultimately did apply for and obtain information. The evidence also shows that the plaintiff, although a foreigner had lived many years in Macon county, and is a highly educated and intelligent man. Yet with all his opportunities to inform himself he entered into the contract of November 8, 1893, and six months thereafter, without having in the meantime made any inquiry, exchanged the deeds called for by the contract and did not in fact until nearly two years had gone by institute any investigation into the subject. He says he trusted Rush; but he had no right

in that sense to trust Rush, there was no confidential rela-
tion between them, they were dealing with each other at
arm's length.

Representations as to value are ordinarily mere expres-
sions of opinion which when charged to have been false and
fraudulent are not treated exactly like representations of
existing facts although under certain circumstances they
may be.   In weighing the evidence in this case we are asked
to consider the fact that three witnesses for the plaintiff and
only one for the defendant testify on the point.   But there
is also this undisputed fact in the case that has great weight,
these representations are alleged to have been made in No-
vember, 1893, yet the contract was not to be consummated
until May, 1894, it is very improbable that Rush would have
made statements which according to plaintiff's testimony
were so palpably false and have given the plaintiff six
months in which to discover the truth, well knowing that the
means of information was within his easy reach.   Under the
circumstances it is just as reasonable to conclude that the
plaintiff was himself imbued with the idea that the then
obscure village near the great city of Chicago would develop
until its real estate would become very valuable and based
his trade on that hope, as that he was actually deceived into
believing that these vacant village lots aggregating 100 feet
front were really worth $4,000 to $5,000.

At all events a court of equity can do nothing for a man
who will not try to take care of himself.   It will not listen
to one who complains of having been misled when it appears
that he has deliberately refused or grossly neglected to use
his own senses.

Unless the transaction is such that the court should
declare it void on account of fraud, it is immaterial for the
purposes of this suit, whether we consider the deed to the
Illinois property a mortgage or an absolute deed.   If it is a

valid mortgage, it supplants the vendor's lien, if it is a valid absolute deed it is the end of the transaction.

We think with the learned trial judge that the plaintiff has been badly beaten in the trade, but he went into it with his eyes open, with all the means of information at hand and all the time and opportunity needed to enlighten him afforded. Under those circumstances the court can give him no relief.

IV. We might with propriety leave the case with what has been above written, but learned counsel on both sides have discussed the question of mortgage or no mortgage, with so much ability that we will briefly give our views on that point.

That a deed absolute on its face may be shown by parol evidence to be a mortgage is a well-settled proposition. An eminent writer on equity jurisprudence states it thus: "The principle which underlies this doctrine is the fruitful source of many other equitable rules; that it would be a virtual fraud for the grantee to insist upon the deed as an absolute conveyance of the title, which had been intentionally given to him, and which he had knowingly accepted, merely as a security, and therefore in reality as a mortgage." [Pomeroy's Eq. Jurp. (2 Ed.), sec. 1196.] To accomplish this purpose courts of equity go apparently in the face of the rule that parol evidence shall not be heard to vary the terms of a written instrument. But the ground upon which equity interposes is that upon which it also sometimes goes apparently in the face of the statute of frauds, that is the ground of fraud, and the purpose to be attained is the same as that which caused courts of equity to bring the foreclosure of mortgages within their jurisdiction, rather than allow the strict common-law foreclosure to go into effect, that is, to relieve the debtor against the unconscionable demands of the creditor. Consequently in reading on this subject we will constantly come across cases in which a grantor in a deed is

insisting that it was intended only to be a mortgage, while the grantee is insisting that it was intended to be as expressed on its face an absolute conveyance. But in the limited research of the writer of this opinion he has never found a case in which the grantee was insisting that the instrument was a mortgage and the grantor that it was an absolute conveyance.

But conceding that the proposition is as open to one side as the other, let us see how the evidence in this case sustains the plaintiff's contention. Quoting again from the same law-writer last named: "The presumption, of course, arises that the instrument is what it purports on its face to be, an absolute conveyance of the land; to overcome this presumption, and to establish its character as a mortgage, the cases all agree that the evidence must be clear, unequivocal and convincing, for otherwise the natural presumption will prevail." [Pomeroy's Eq. Jurp. (2 Ed.), sec. 1196.] And the same rule has often been declared by this court. [Ringo v. Richardson, 53 Mo. 385; Worley v. Dryden, 57 Mo. 226; Forrester v. Moore, 77 Mo. 651; Bobb v. Wolff, 148 Mo. 335.]

The testimony of the plaintiff himself, who as before said, is a gentleman of education and intelligence, purporting to give a recital of the conversation between himself and W. I. Rush, is as follows: "Mr. Rush said, 'We have agreed on buying the land, I promised $4,000 and $500 in cash, but Robert Jones is to give me in work and some implements worth about $200, and I will give him a deed on the lots in Chicago worth $3,000 for the balance.' He was to give $1,000 and $500 in cash next May after that. 'Well,' said I to Mr. Rush, 'the lots—I don't want them and Robert Jones does not want the lots. He is in debt. He wants money to pay his debt.' 'Well,' said Mr. Rush, 'I assure you that the lots are worth $4,000 and I intend to have for the lots before I sell them in two years $5,000.' I told him even if he got $10,000, Robert Jones did not want but

$3,000. That was the agreement, and Mr. Rush was to have the liberty for two years to sell the lots for Mr. Jones that·he held for $3,000 with no interest on them." Then on cross-examination he re-stated the conversation in this way: " 'And the agreement,' said Mr. Rush, 'is this: I propose to give Robert Jones $4,500 for the land, and he is to work for me and sell some implements that he had, I guess about $200 (I think he said) and I am going to give him a paper or whatever you like as mortgage or security on those lots, four lots in Glen .Ellyn.' He said he would give these lots; that they were worth $4,000, with the permission that he could have them for two years to sell. I told him that Robert Jones did not want the land or these lots in Glen Ellyn, and I didn't want them—didn't have any need of them, and then Rush said: 'Well, Mr. Jones, the lots are worth $4,000 and I intend to have $5,000 for them before the two years are just up—before they will end.' 'Well, all right,' said I, 'have $10,000 for them, it is nothing to us. Robert Jones does not want but $3,000 for them.' 'Well,' said he, 'Robert Jones is just as sure of his money as if it were just now in his pocket.' Then I said: 'Well, if you will give Robert Jones the money, of course I am not objecting to sign for the land, if you are sure to give him the money.' "

It will be noticed that although the witness is undertaking to state what was said by Mr. Rush and himself in that interview and it is upon the words used by them in that interview that plaintiff seeks to prove that the agreement was for a mortgage, yet he himself was not very clear as to exactly what was said, as shown by the fact the account he gave of it in his cross-examination was different from that which he had just before given in his examination in chief, yet in both he was purporting to give the exact words. The word mortgage was not used in his first recital and was only used in an uncertain connection in the second. The testi-

mony of Robert Jones and his son was very much less to the point than that of the plaintiff. The nearest Robert Jones came to testifying to the mortgage theory was: "Well, Mr. Rush offered me $1,500 in cash on the first of next May at that time and then four lots in Illinois for security on the farm. We make a contract on the land for $4,500 and then we take them lots as security. He wanted me to take them lots as security. I told him I could not do that before I saw Mr. James V. Jones. I told Mr. Rush everything truthfully..... Mr. J. V. Jones said it was all right for everything seemed just as Mr. Jones wanted it. Mr. Jones said he was willing to do it He did not want that Illinois land at all, but he think it would be all right..... Mr. Rush said the money was for him, may be in two years, may be in six months. I get a chance to sell that land, and pay you money anyhow inside of two years. You can depend on me. I take care of them lots and sell them, and it will not cost you a cent to sell them, and I will pay you the money on them. Mr. Rush said he would pay the taxes and everything."

Edward Jones' testimony was, "Mr. Rush said: 'I have offered him $4,500 and I offered to pay him $1,500 down in cash, and then I have lots in Glen Ellyn and I will give him a deed to them for two years and I will make them lots into cash inside of two years and the lots is worth $4,000 to $5,000 at any time.' "

Now, even if we leave out of view the oral testimony on the part of the defendant and take only the written contract of November 8, 1893, and the two deeds made in conformity to it, and the contract appointing Rush agent of Jones to sell the Illinois lots can we say that the evidence for plaintiff on this issue fills the requirement of the law as above quoted, and that it is so "clear, unequivoval and convincing" as to overcome the solemn deeds? If we take the words used by the contracting parties as given in testimony by the plaintiff himself, they are as consistent with the

terms contained in the contract of November, 8, 1893, and the memorandum appointing Rush agent to sell the lots, as they are with the plaintiff's theory.    Taking the testimony on the part of the plaintiff alone, it is not sufficient to overcome the law's presumption that the solemn written instruments executed by the parties with deliberation express their real purpose.

Having reached this conclusion without weighing the oral testimony on the part of defendants it will be unnecessary for us to consider the question of the admissibility of the evidence of the attorney who wrote the contract.

We think the trial court reached the correct conclusion on the evidence, and the judgment is affirmed.

All concur.