STERLING P. HUNTER v. LEE HUNTER ET AL., Appellants.—39 S. W. (2d) 359.

Division One, May 21, 1931.*

*NOTE: Opinion filed at October Term, 1930, March 31, 1931; motion for rehearing overruled at April Term, May 21, 1931.

818

*Hope & Hope* for appellants.

822

*Sharp & Baynes* and *Ward & Reeves* for respondent.

RAGLAND, J.—This case comes to the writer on reassignment. It consists of two appeals, taken in separate and independent actions, consolidated here. The principal case, No. 28,989 of our docket, is a suit in equity in which Sterling P. Hunter is plaintiff and William L. Stacy, Hunter's Bank, Lee C. Phillips, Lee Hunter, Marcus Turney and F. S. Hummel are defendants, and wherein the plaintiff seeks to have the lien for a balance of unpaid purchase money owing him by defendant Stacy on a sale of land, arising by implication of law, decreed priority over the liens of a first and second mortgage executed by said Stacy on the land after the conveyance to him, and also the liens of general judgments rendered against him subsequent to such conveyance. In the circuit court judgment was given plaintiff in conformity with the prayer of his petition; the defendants Lee Hunter, Marcus Turney and F. S. Hummel appealed.

In the second case, our No. 28,988, Sterling P. Hunter is plaintiff and L. H. Hummel, Marcus Turney and Lee Hunter are defendants. The plaintiff in this case asked that defendant L. H. Hummel, purporting to be the substitute trustee in the first deed of trust given by Stacy, be enjoined from executing or attempting to execute the power of sale conferred by such deed of trust, on the ground that said Hummel's appointment as substitute trustee by the circuit court was void. On the filing of the petition a temporary injunction was granted. On final hearing it was made permanent. From this judgment the defendants appealed.

The questions involved in the principal case will be considered first as their determination will simplify the solution of those raised in the second.

On the 4th day of November, 1919, plaintiff sold and conveyed to defendant Stacy 429 acres of land in New Madrid County, referred to in the record as the Hunter farm. As the consideration for such conveyance Stacy assumed a $3,000 mortgage on the land conveyed, deeded other land to plaintiff, paid him a small amount of money in cash and gave him his, Stacy's, personal unsecured note for $12,000, payable on or before seven years after date with six per cent per annum interest thereon from date payable annually. The note provided that the interest should be compounded if not paid when due, and that ten per cent of the amount of the note should

be added if placed in the hands of an attorney for collection. Growing out of this transaction plaintiff asserts that he has a vendor's lien on the land conveyed to Stacy for unpaid purchase money as represented by the note. This suit was commenced May 5, 1926, before the maturity of the note.

On March 2, 1922, defendant Stacy gave a deed of trust on the Hunter farm and a large body of other land in the same county to secure to the Northwestern Mutual Life Insurance Company the payment of a note of even date for $50,000 with six per cent per annum interest thereon from date, payable semi-annually. The note provided that $2,500 of the principal should be paid in two years after date, $2,500 three years after date and the remaining $45,000 five years after date. The deed of trust was duly filed for record March 31, 1922.

On September 26, 1921, Stacy executed a deed of trust conveying the Hunter farm (and other lands) to secure to one A. B. Hunter a note of even date for $36,185.43, due two years after date, with eight per cent per annum interest thereon from date until paid. This deed of trust was recorded April 8, 1922, having been withheld from record until after the recording of the deed of trust to the Life Insurance Company. The note was subsequently assigned for value, and before maturity, to defendant Hunter's Bank.

On November 24, 1924, one Mrs. C. A. Cook recovered a judgment in the Circuit Court of Scott County against said Stacy for the sum of $3,465, on a note dated April 9, 1922. On the same day and in the same court one George D. Burroughs recovered against Stacy a judgment for $3,696, on a note dated May 25, 1921. Transcripts of both judgments were filed in the office of the Clerk of the Circuit Court of New Madrid County on the 12th day of December, 1924. On March 27, 1925, Lee Hunter (defendant herein) recovered against Stacy in the Circuit Court of Scott County a judgment for $6,996.43 on four notes all bearing date January 30, 1923. A transcript of this judgment was filed in the office of the Clerk of the Circuit Court of New Madrid County on the 9th day of April, 1925.

On January 20, 1926, the Cook and Burroughs judgments above mentioned were duly assigned for value to defendant Lee Hunter. On February 6, 1926, the Life Insurance Company for value assigned its $50,000 mortgage note, hereinbefore described, to Hunter, the assignment being taken by him in the name of the defendant Marcus Turney. At the time of such assignment a large amount of interest was in arrears and the first two installments of the principal were past due and unpaid.

On September 1, 1925, plaintiff instituted a suit in equity against defendant Stacy in the Circuit Court of New Madrid County to establish a vendor's lien for the balance of the unpaid purchase

money for the Hunter farm, represented by the $12,000 note heretofore described. On the same date he gave notice of the commencement of the action by filing in the office of the Recorder of Deeds of New Madrid County a statutory notice of *lis pendens* in due form. The proceeding culminated in a decree, rendered October 14, 1925, establishing the lien. A certified copy of the decree was filed in the office of the Recorder of Deeds January 19, 1926.

On the 26th day of April, 1926, the Sheriff of New Madrid County, under an *alias* execution issued out of the office of the Clerk of the Circuit Court of Scott County, on the judgment theretofore rendered in favor of Lee Hunter against defendant Stacy et al., levied upon and seized "all the right, title, interest and estate" of said Stacy in and to the Hunter farm and a large amount of other land. At a sale under the execution, on the 21st day of May, 1926, one Fred Krone purchased the land so levied upon for $92 and received a sheriff's deed in due form conveying the same to him.

The trial court by its finding and judgment, entered October 8, 1927, held that plaintiff had a vendor's lien on the Hunter farm for unpaid purchase money, as evidenced by the $12,000 note, that such lien had priority over the two mortgage liens as well as the judgment liens, and that Krone, the purchaser at the execution sale, took title subject thereto. After so finding and adjudging it decreed foreclosure of the vendor's lien and sale of the land.

Other facts having an immediate bearing on the questions presented for determination will be stated in connection with their consideration.

Appellants' first group of contentions challenges in effect the existence of the alleged vendor's lien. They say, first, that the existence of the lien is negatived by the consideration clause in the deed from plaintiff to Stacy, which recites: "in consideration of the sum of Thirty-one Thousand and Three Hundred Dollars, represented in exchange of lands, to them paid by the said party of the second part, the receipt of which is hereby acknowledged;" second, that the $12,000 note, if made in connection with the sale and conveyance of the 429 acres of land, was taken not as an evidence of the debt for the balance of the purchase money, but as *payment* of the debt; and third, that "plaintiff by the law of laches and estoppel *in pais* is precluded from asserting the said lien."

I. 1. If in fact plaintiff sold and conveyed the 429 acres of land to Stacy "in exchange of lands" as recited in his deed, there could not have arisen in his favor a lien for the purchase price. For it is unquestionably the rule that where the grantor accepts other property for the purchase price, whether it be lands or chattels, there can be no vendor's lien. [Wal-

ton v. Young, 132 Ala. 150; Keith v. Wolf, 5 Bush (68 Ky.) 646; 3 Pomeroy's Eq. Juris. (4 Ed.), pp. 3016-3022.] To avoid the effect of the recital just referred to plaintiff offered and the court over the objection of the defendants admitted parol evidence as to what the consideration was in fact. From this evidence it appears that at the time the deed from plaintiff to Stacy was drawn there was also prepared by the same scrivener a deed from Stacy to plaintiff; that through the mistake of the scrivener the consideration clause intended for the deed from plaintiff to Stacy was inserted in the deed from Stacy to plaintiff and vice-versa; and that the consideration for the conveyance from plaintiff to Stacy, as heretofore stated, was a conveyance of land to plaintiff by Stacy, the assumption by the latter of a $3,000 mortgage debt on the land conveyed to him, the payment of a small amount of money in cash and the giving of a note for $12,000 more.

The deed from Stacy to plaintiff contains this recital: ''Of the above consideration of $60,000 the sum of $25,700 is paid in cash; $31,300 is represented by the purchase price of other lands deeded by the party of the second part to said W. L. Stacy, one of the grantors herein, and the balance of $3,000 is represented by a deed of trust on said land to the Northwestern Mutual Life Insurance Company on which there is a balance of $3,000, which is assumed by said W. L. Stacy as a part of the consideration for the lands deeded by said Sterling P. Hunter to said W. L. Stacy.'' Appellants argue that the two deeds issuing from one and the same transaction must be read together as constituting the contract between the parties; that when so read the clauses dealing with the respective considerations must be held to be contractual and not mere recitations of fact; and that being contractual they cannot—in the absence of averments of fraud, accident or mutual mistake in the petition— be contradicted by parol evidence. The argument is ingenious and would not be without force if this were an action to enforce the mortgage assumption clause found in the deed from Stacy to plaintiff. That assumption is the only part of the consideration expressed in either deed which may be said to be contractual in nature; the recitals in all other respects purport to be mere statements of fact, and as such are subject to contradiction. [Fontaine v. Savings Inst., 57 Mo. 552, 561; Wood v. Broadley, 76 Mo. 23, 33; Chambers v. Chambers, 227 Mo. 262, 287, 127 S. W. 86; 8 R. C. L. 971.]

2. At the time of the transaction in question defendant Stacy was regarded as a wealthy landowner; his credit and financial standing with banks and individuals were such that he could borrow as much as fifteen or twenty thousand dollars on his unsecured personal note; he had never found it necessary to give mortgages on his land to secure his financial obligations. Plaintiff testified in substance that he had

no hesitation in accepting Stacy's note for the $12,000 balance of the purchase money for the land, because he considered Stacy perfectly good for that amount; that in closing the transaction nothing was said about a vendor's lien; and that the existence of such a lien never occurred to him until four or five years later after Stacy had become financially embarrassed and was being sued by his creditors. In the course of his cross-examination by defendants' counsel he was asked this question: "You were willing to accept his $12,000 note in full and complete payment of that much of your land?" He answered, "Yes, sir." And further along this occurred: "Q. And you considered the note absolutely good? A. At the time; yes sir. Q. And accepted it as payment? A. Yes." On the foregoing testimony, and particularly the questions and answers just set out, appellants base their insistence that the acceptance of the note extinguished the debt for the purchase price— that it constituted a novation. In order for a note given by a debtor for a precedent debt to extinguish the debt, a clear agreement or manifestation of intention of both the parties to that effect is essential. The evidence is devoid of anything said or done or of a single fact or circumstance which manifested an intention on the part of either plaintiff or defendant Stacy, at the time of the transaction, that the former was to accept, or did accept, the $12,000 note in absolute payment of the purchase price of the land or any part of it. The agreement was merely that plaintiff would take Stacy's note for $12,000 of the purchase price. "An agreement that a debt shall be paid, or shall be payable, or that it has been paid, by the note of the debtor, is a contract for an extension of the time of payment, and that the debt shall be paid, or that it has been paid, by the note of the debtor, on condition that the note is paid, but not otherwise." [21 R. C. L. 73.] In McMurray v. Taylor, 30 Mo. 263, it was held that where a note has been taken for an indebtedness evidenced by open account, and a receipt given therefor, a statement in the receipt to the effect that the note was taken "in settlement of the account" would not be sufficient, alone, to authorize the court to submit to the jury the issue whether the note was taken in payment or satisfaction of the account.

But little importance can be attached to the affirmative answers given by the plaintiff to the questions whether he had accepted the note as payment. For it is entirely clear from his testimony as a whole that in giving the answers he did not have in mind the distinction between taking the note for the remainder of the purchase price and accepting it in payment of the debt. Nothing had occurred in his examination to call his attention to such distinction He merely walked into a trap set by an adroit cross-examiner.

That the plaintiff at the time of taking the note for the remainder of the purchase price may not have known of the existence of a

vendor's lien, or if so, had no intention of claiming it, is of no consequence. The lien exists independent of any express agreemen' at the time of the conveyance or intention on the part of the grantor at such time to claim it. [Delassus v. Postom, 19 Mo. 426; Adams v. Buchanan, 49 Mo. 64; Jones v. Rush, 156 Mo. 364; 27 R. C. L. 571, sec. 313.]

There is no evidence in the record that would justify a holding that plaintiff accepted the $12,000 note in extinguishment of the debt for the remainder of the purchase price of the land, or that by taking it he thereby waived his vendor's lien.

3. Under this head appellants say: ''Plaintiff never thought of claiming the lien until Stacy's other creditors began suing him, and even then plaintiff did not move until September 1, 1925, when, six years after the exchange of lands, he filed his first vendor's lien against Stacy. In the meantime appellant Lee Hunter, Mrs. Cook and Judge Burroughs, whose claims appellant acquired, had loaned large sums of money to Stacy, and at much expense and trouble had reduced their notes at maturity to judgment liens, all before plaintiff sued, and all in reliance upon Stacy's ownership of these properties, and in ignorance of the alleged vendor's lien afterward set up by plaintiff.''

Laches is not mere delay, but delay that works a disadvantage to another. There is no evidence that respondent's delay in asserting his lien worked a disadvantage to or misled appellant Lee Hunter, Mrs. Cook or Judge Burroughs. It is true that the notes on which they obtained judgments against Stacy bore dates subsequent to that of respondent's conveyance to Stacy, but it nowhere appears that any of the creditors named ever examined the land records or made other inquiry as to Stacy's titles or whether there were liens or encumbrances against his lands, or that in loaning him money they acted on the belief that the lien in question, or any other lien, had been discharged. On the contrary the evidence raises a strong presumption that the loans were made on the strength of Stacy's general credit and reputed financial responsibility. Defendants' charge of laches is without support in the evidence.

II. The vendor's implied lien will not be enforced against a subsequent bona-fide grantee or encumbrancer for value, as the latter takes the legal title free from secret equities of which he has no notice. Plaintiff in his petition alleged, and on the trial offered evidence for the purpose of proving, that the Northwestern Mutual Life Insurance Company at the time it took the deed of trust on the Hunter farm to secure the loan of $50,000 to Stacy had actual knowledge of the existence of the lien in question. The finding of the trial court

in his favor as to such issue is challenged by appellants. The evidence with respect thereto will be summarized.

Plaintiff first offered evidence tending to show that the Insurance Company for many years prior to March 2, 1922, had been engaged in making farm loans in Southeast Missouri; that such loans had been made through one W. E. Hoag; that Hoag maintained an office in St. Louis; that on a window of his office this sign appeared: "Northwestern Mutual Life Ins. Co.; Agent, Mr. Hoag;" that Hoag used stationery bearing a similar legend; that all applications for farm loans were mailed by local correspondents of the Insurance Company to Hoag at St. Louis; that he came to inspect all the lands offered to the Company as security for loans; that he came in person to "close" loans upon their final consummation. After putting in such evidence, from which it was clearly inferable that the Insurance Company held Hoag out as its general agent, so far as its farm loan business was concerned, plaintiff himself took the witness stand. He testified in substance that in the latter part of 1920 he visited Hoag a number of times at his office in St. Louis; that he and Hoag were acquaintances of long standing; that Hoag was familiar with the Hunter farm, having gone over it while it was owned by witness for the purpose of passing on it as security for a loan; that on one or more of the visits just referred to he told Hoag of having sold the farm to Stacy, relating in detail the terms of the trade, including the taking of the $12,000 note for the balance of the purchase money; and that in connection with his statement of the origin of the $12,000 note and the purpose for which it was given he offered to sell it to Hoag or pledge it for a loan. He further testified that, in response to his offer to sell or pledge the note, Hoag told him, "We only loan money on our own personal notes we write ourselves;" that "his company did not buy no individual notes." Hoag himself testified that the Insurance Company did not deal in notes—it neither bought nor sold them.

Hoag was interrogated very fully, both on direct examination and cross-examination, as to the scope of his duties as agent for the Insurance Company. From his testimony, which was uncontradicted, it appears that his duties were as follows: To receive applications for farm loans; upon the receipt of such an application to make a personal inspection of the proposed security; after such inspection to make a written report to the Company's finance committee, and in which describe and value the property and recommend the amount of loan to be granted; if the application for a loan was accepted by the Company's finance committee, to notify the applicant of that fact and forward abstracts of title furnished by him to the counsel of the Insurance Company at its home office in

Milwaukee, Wisconsin, who alone was authorized to pass on titles of proposed borrowers; if the appellant's title was approved by counsel, to close the loan in accordance with specific written instructions given by him in each individual case. The instructions given witness with respect to the closing of the loan of $50,000 to Stacy were as follows:

"In the loan of $50,000 voted William L. Stacy on property in New Madrid County, Missouri, I hand you herewith the deed of trust to be recorded, prepared receipts for the checks and the company's two checks, one for $40,000 and one for $10,000 both payable to the order of William L. Stacy.

"The check is to be delivered or mailed to the payee on your being furnished with,

"The usual certificate from the clerk of the United States District Court at St. Louis, as to whether or not notices of lien for unpaid United States taxes against the applicant have been filed by the collector of internal revenue. . . .

"The taxes for 1921 should be shown paid.

"The continued abstract of title on examination of all records of said county showing the company's trust deed filed for record, and no other unsatisfied incumbrances, conveyances or other instruments since the last examination of the records, or judgments in the state courts against, or bankruptcy proceedings by or against William L. Stacy."

Hoag further testified that on some of the occasions referred to by plaintiff in his testimony the latter inquired where he might sell some notes, but did not tell Hoag at the time of making such inquiry, or at any other time, that he held a note given by Stacy for the purchase price of land; and that at the time the $50,000 loan was consummated he, Hoag, had no knowledge that there was an outstanding note given for the purchase price of the land offered a" security or that Stacy had not fully paid for such land.

If the Insurance Company at the time it made the $50,000 loan to Stacy on the Hunter farm had any knowledge or notice of plaintiff's vendor's lien, it was because such knowledge or notice had been communicated to its agent Hoag at the times and in the manner as testified by plaintiff, and not otherwise. Assuming the truthfullness and accuracy of plaintiff's testimony, was his statement to Hoag in 1920 that he held Stacy's note for $12,000 for a part of the purchase price of the Hunter farm notice to the Insurance Company of that fact?

"The principal, according to a settled rule of law, is bound by the knowledge of the agent, or—otherwise stated—notice to the agent constitutes notice to the principal, the rule being derived from the duty of disclosure by the former to the latter of all material facts coming to his knowledge with reference to the subject of his

agency, and a presumption that he has discharged that duty.'' [21 R. C. L. 838.] But notice to the agent to bind the principal must be within the scope of the agent's employment. This because there is no duty on the part of the agent to disclose to his principal matters in no way related to the subject of the agency. To determine the scope of Hoag's employment is a matter of first importance.

At the outset it is obvious that the evidence tending to show that the Insurance Company held Hoag out as its general agent must be discarded for all purposes of the case. Plaintiff was not misled by such holding out, if any. His communicating to Hoag the fact that he had the Stacy $12,000 purchase money note was not· for the purpose of giving either Hoag or the Insurance Company notice of that fact. His statement to Hoag was made only for the purpose of getting money on the note by sale or pledge; his conveying to Hoag in connection therewith information relativ? to the origin and character of the note was casual or incidental. If therefore the notice to Hoag is to be imputed to his principal it must be because it was with respect to a matter within the actual rather than the apparent scope of his agency.

From Hoag's testimony it is plain that the scope of his authority and duties as farm loan agent of the Insurance Company was carefully circumscribed. He had no authority as such agent to deal in commercial paper; to buy or sell notes or lend money on them as security. It was no part of his duty to examine titles to lands offered as security by applicants for loans, or to pass on such titles or make inquiry or investigation as to whether they were subject to liens or encumbrances; nor was it any part of his duty to make report to his principal in respect to any such matter. As agent he was entrusted with but one duty with respect to land titles: when he went to close a loan he was required before delivering his principal's check to the borrower to see that the continued abstract of the title showed the company's trust deed filed for record and no other unsatisfied encumbrances, conveyances or other instruments filed for record since the last previous examination of the record. All other matters pertaining to land titles lay beyond the scope of his employment.

From the foregoing it appears that Hoag received the information that there was an outstanding note given for a part of the purchase price˙ of the Hunter farm in connection with a transaction which plaintiff was attempting to negotiate with him and which lay wholly without the scope of Hoag's agency. It further appears that the information so conveyed to him was not relevant to any matter then or thereafter falling within the range of his employment. Whether the knowledge of an agent, in order to bind the principal, must have been acquired by the agent while acting within the scope of his employment or in the transaction of the principal's business

is a question upon which the courts are not agreed. But where as here the knowledge was casually obtained by the agent and was not pertinent to the subject-matter of any transaction which he was then or thereafter authorized to conduct, or did conduct, for his principal, there can be no reason for holding that such knowledge should be imputed to his principal. Under such circumstances there is no duty of disclosure. [Willard v. Denise, 50 N. J. Eq. 482.]

In Hickman v. Green, 123 Mo. 165, it was held that, where an agent was employed to exchange land, but not to examine the title, notice to him of an unrecorded deed was not notice to his principal. That case is directly in point and is authority for holding, as we do, that Hoag's knowledge of the existence of the vendor's lien in question is not to be imputed to the Insurance Company.

The Insurance Company having been a bona-fide encumbrancer for value, the lien of its mortgage took priority over the secret vendor's lien existing in favor of respondent, and appellant Hunter having purchased the note to which the mortgage lien was incident took precisely the same title which his vendor had. [27 R. C. L. p. 684, sec. 449.] The fact that installments of the note were past due at the time of its sale and transfer to Hunter is without relevance. Equities between the maker and the payee of the note are in no wise involved.

III. The petition did not allege, nor was there any satisfactory proof, that A. B. Hunter, at the time he took the note and second mortgage now held by defendant Hunter's Bank, had notice or knowledge of the existence of a vendor's lien on the Hunter farm. Notwithstanding, the chancellor found that both Hunter and the bank knew of the lien, and accordingly decreed that the lien of the second mortgage was inferior to the vendor's. Defendant bank did not appeal but abides the judgment.

IV. Appellants next contend that respondent's lien should be postponed to the judgment liens. Whether the liens of judgments rendered against a grantee after the conveyance to him are entitled to priority over the grantor's lien for purchase money is a question which has never been passed on in this State so far as we have been able to find. It has been alluded to and discussed to some extent, but has never been directly in decision. [Adams v. Buchanan, 49 Mo. 64, 69-70; Funk v. Seehorn, 99 Mo. App. 587, 597.] With respect to it Pomeroy has said:

"Whether the grantor's lien is or is not superior to that of subsequent judgments recovered against the grantee is a question upon which the American decisions are in direct conflict; nor is it possible by any interpretation to reconcile their opposing views. On principle, however,—and especially when considered in connection with the universal system of registry,—it seems to me clear that the subsequent judgment liens are entitled to precedence." [3 Pomeroy's Eq. Juris. (4 Ed.) pp. 3024-3025.]

However, the general doctrine concerning priorities with respect to such liens is set forth by the same author as follows:

"The doctrine is certainly established as part of the equity jurisprudence, and rests upon the solid basis of principle, that prior equitable interests *in rem*, including equitable liens upon specific parcels of land, have priority of right over the general statutory lien of subsequent docketed judgments, although the latter is legal in its nature. Judgment creditors are not 'purchasers' within the meaning of the recording acts, and unless expressly put upon the same footing, they do not obtain the benefit which a subsequent purchaser does by a prior record. The equitable doctrine is, that a judgment and the legal lien of its docket binds only the actual interest of the judgment debtor, and is subject to all existing equities which are valid as against such debtor." [2 Pomeroy's Eq. Juris. (4 Ed.) pp. 1462-1463.]

That a vendor's lien is included within the terms "equitable interests" and "existing equities" as used in the text is convincingly shown by an examination of the supporting cases cited in the footnotes.

The view that a vendor's lien takes precedence over the general statutory lien of a judgment conforms to the long established principle that the lien of an attachment or levying creditor is subject to all outstanding equities in favor of third persons. It is also entirely consistent with our registry laws as we have always construed them, namely, that such laws are for the protection of purchasers and encumbrancers for value, and that creditors are neither. We accordingly hold that respondent's lien has precedence over the judgment liens.

V. Krone, who purchased at a sale under an execution issued from the office of the Clerk of the Circuit Court of Scott County, was a purchaser for value. But at the time of the sale transcripts of the Cook and Burroughs judgments had been duly filed in the office of the Clerk of the Circuit Court of New Madrid County, and a certified copy of the decree establishing the vendor's lien of respondent had been recorded in the office of the Recorder of Deeds of said county. Krone therefore

had constructive notice of both the vendor's lien and the judgment liens, and consequently the interest acquired by him under the sale was subject to them as well as the liens of the two deeds of trust.

From all of the foregoing it appears that the liens against the Hunter farm in the order of their priority are as follows: the lien of the deed of trust given to the Northwestern Mutual Life Insurance Company and by it assigned to appellant Hunter; the vendor's lien in favor of respondent; the lien of the deed of trust given to A. B. Hunter and by him assigned to defendant Hunter's Bank; and the liens of the Cook and Burroughs judgments, now owned by appellant Hunter. Subject to all of said liens, Krone, so far as the record discloses, has the legal title.

The only specific relief asked by plaintiff in his petition was that the vendor's lien be adjudged to have priority over the other liens. After the suit had been commenced, and during its pendency, Krone purchased the land at the execution sale, and the $12,000 note secured by the vendor's lien matured. The court, without any supplemental bill having been filed and without Krone, the holder of the legal title, having been brought in as a party, decreed foreclosure of the lien. This was error.

VI. We come now to consider the appeal in the injunction proceeding. Hoag was trustee in the deed of trust for the Insurance Company. He resigned as such trustee after the assignment of the note and deed of trust to appellant Hunter. As the deed made no provision for a successor trustee or the appointment of a substitute trustee, Hunter sought to have the Circuit Court of New Madrid County appoint a trustee under the authority conferred by Sections 13418 and 13419, Revised Statutes 1919. These sections provide that a party in interest may present to the court "his . . . affidavit, stating the facts of the case specifically," and that the court if "satisfied that the facts stated in such affidavit are true . . . shall make an order appointing the sheriff, or some other suitable person of the county trustee, etc." The record as a whole discloses, and the order of the court appointing L. H. Hummel trustee itself recites, that it was made solely upon an unverified petition. No affidavit was presented or filed. The proceeding being purely statutory, and not according to the course of the common law, it was necessary that the statute be strictly complied with in order to give the court jurisdiction. [Hitch v. Stonebraker, 125 Mo. 128, 28 S. W. 443.] It is plain that the order on its face is void, and being void can be attacked collaterally.

The injunction suit was brought after the commencement of the action to have priority of liens determined and was really ancillary

to it, but it does not appear that appellants suffered injury or any particular inconvenience through the bringing of a separate proceeding.

The judgment of the circuit court in the principal case is reversed in its entirety and the cause remanded with directions to that court to enter judgment adjudging the liens against the Hunter farm in respect to their priority in accordance with the views herein expressed, and nothing more. The judgment in the injunction suit is affirmed to the extent that it enjoins defendant Hummel from attempting to execute the power of sale conferred upon the trustee in the deed of trust executed to the use of the Northwestern Mutual Life Insurance Company. In so far as said judgment enjoins defendants Lee Hunter and Marcus Turney from taking steps to secure the appointment of a trustee to execute the power of sale provided for in said deed of trust, if so advised, or to foreclose the lien of said deed of trust, it is reversed. All concur.