SAMUEL P. HODGEN *et al.*

*v.*

WILLIAM GUTTERY.

1. CHANCERY—*commencement of suit—of notice before bill filed.* The filing of the bill is the commencement of a suit in chancery, and service had therein on process issued, or by publication of notice made, prior thereto, is a nullity.

2. In such a case, where it was attempted to obtain service by publication, the defendant being a non-resident, it appearing the affidavit of non-residence was made on the 15th day of July, and that, on the same day, an order for publication was entered, and the notice was published for the first time on the 17th of that month, and the file mark on the bill bore date the 19th of the same month, it was *held,* even if the affidavit might have been used after the bill was filed, that still the notice published before the bill was lodged in the office of the clerk and filed by him, could not be regarded as legal and binding—there was not constructive notice, such as required the defendant to regard it, or that gave the court jurisdiction of his person, and hence he was not bound by the decree.

3. SAME—*time of filing bill—oral evidence.* Nor could it be shown by oral evidence, that the bill was filed at a different date than was indicated by the file mark, endorsed by the clerk.

4. SAME—*mistake in the file mark—how corrected.* Though if a mistake was really made, the complainant might, within a reasonable time, have applied to the court, on proper notice to the defendant, for leave to the clerk to amend the file mark on the bill. But until such an amendment of the record was made, the date indicated must be held conclusive. The court is not at liberty to correct or obviate its effect by conjecture as to the neglect of the clerk to do his duty, but it must be presumed that he did not so far disregard his duty as to date the filing of the bill at a different time from that when it was deposited with him to be filed.

5. MORTGAGES—*right of a junior incumbrancer to redeem, when not served with process.* The owner of certain lands conveyed to another by deed of general warranty, taking back a mortgage on the premises for the unpaid purchase money. Subsequently the grantee conveyed to a third person, receiving the entire purchase price, and his grantee conveyed to another, taking a mortgage for the purchase money. The first grantor filed a bill to foreclose his mortgage, making his grantee and the two subsequent grantees parties defendant. The last grantee alone was served with process, the attempted service on the two others being invalid. A decree *pro confesso* was rendered against all the defendants, ordering a sale of the premises

in satisfaction of the complainant's mortgage : *Held*, although the last grantee, the owner of the fee, was served with process, still the rights of his grantor, he not being served and holding a mortgage from the former for the purchase money, no matter what decree was rendered, were not affected thereby, and he was entitled to redeem from the sale foreclosing the first mortgage, and the party receiving a deed to the land by virtue of the certificate of purchase issued under the foreclosure sale of the first mortgage, at most took the premises subject to his right of redemption.

6. EVIDENCE—*weight thereof.* Upon the question, whether the second mortgagee, whose mortgage was duly recorded, was chargeable with notice of the existence of the first mortgage, so as to require him to redeem therefrom, the same not being recorded, both he and his grantor testifying positively that he had no notice of its existence, it was *held*, the mere statement of a witness, that " he understood him to admit that he had a knowledge of the mortgage when he purchased the land," was insufficient evidence to overcome the positive testimony of the two other witnesses, and charge · him with such notice, such statement being, at best, the mere understanding of the witness, there being nothing to show from what he derived his understanding, and the burden of proof devolving upon the party claiming under the first mortgage to show the second mortgagee was chargeable with such notice.

7. PURCHASER—*who may buy in an outstanding title.* The existence, merely, of the relation of landlord and tenant, will not create the relation of trustee and *cestui que trust*, so as to prevent the tenant buying in for his own use an outstanding title in the premises.

8. CLOUD UPON TITLE—*when it may be removed.* Equity will entertain jurisdiction at the instance of the owner in fee of lands to remove a cloud upon his title created by a sale of the premises and a deed thereto under a decree of foreclosure of a mortgage thereon, although the decree and deed as to him are void, he not having been served with process in the foreclosure suit, and although the land is not chargeable with the mortgage by · reason of the same not having been recorded, and because he had no notice for its existence at the time he purchased.

9. LIMITATIONS—*suit to remove cloud upon title.* A suit to remove a cloud on a title is only barred, like any other case in equity, by the general statute of limitations, and is not governed by the statute limiting the time of bringing writs of error.

10. DECREE—*when becomes final.* It has been held, that a decree rendered on publication of notice, and where the defendant is not served with notice of the decree as provided by the statute, does not ˙become final, in fact, until three years from the time it was rendered.

11. SAME—*within what time bill of review or writ of error may be brought.* And that in such case, where the defendant has received no actual notice

of the pendency of the suit, or of the existence of such decree against him, a bill of review or writ of error may be brought at any time before the expiration of five years after it thus became final.

APPEAL from the Circuit Court of Logan county; the Hon. JOHN M. SCOTT, Judge, presiding.

Mr. WILLIAM B. JONES and Mr. W. P. RANDOLPH, for the appellants.

Messrs. BEASON & BLINN, and Messrs. WILLIAMS & BURR, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

In November, 1855, James Primm sold and conveyed to David Hicks 180 acres of land, by deed containing covenants of general warranty. The land was situated in Logan county. Hicks executed a mortgage on the premises to Primm, to secure two notes given for a portion of the purchase money, each for the sum of $490, due in one and two years, respectively. The mortgage was never recorded. On the 11th day of July, Hicks sold the land to appellee, who then resided and now resides in Ohio. Appellee paid the entire price, by deeding real estate in Ohio in exchange for the land. Soon after the sale, appellee had the title examined by an attorney, who pronounced it good and no incumbrance on the land.

On the 25th of September, 1857, appellee sold and conveyed the land to McMullen, and took a mortgage on the premises, to secure the purchase money. It was recorded on the 1st of October, 1857, in the proper office. McMullen having failed to pay the purchase money, on the 2nd of June, 1860, appellee took the land back, and McMullen re-conveyed to him. In July, 1858, Primm filed a bill in the Logan circuit court to foreclose the mortgage, for the note last falling due to him, for purchase money. The bill seems to have been filed in the name of one Hill, who disclaims any interest in the suit. Appellee, Hicks and McMullen were made defendants.

28—58TH ILL.

The bill charges, that although the mortgage was not recorded, appellee and McMullen had actual notice of its existence, at the time they purchased.

It appears that on the 15th day of July, 1858, John Wyatt made an affidavit that appellee and Hicks were non-residents, and on the same day the clerk made an order of publication, which was published, for the first time, in a newspaper in Lincoln, on the 17th of that month. The bill was filed on the 19th, four days after the filing of the affidavit and two days after the first publication of the notice. There was no appearance by any of the defendants, and none of them were served personally but McMullen. A decree *pro confesso* was, on default, rendered at the September term, 1858, against all of the defendants, and it finds that appellee and McMullen had purchased with notice of the mortgage, and ordered the mortgaged premises to be sold and the debt to be paid out of the proceeds of the sale, and the surplus, if any, to be paid to Hicks. The master sold the land, and it was bid in by the attorney of record in the name of Hill, for the amount of the decree and the costs. The sale was made on the 20th of December, 1858, and a certificate of purchase was executed by the master to Hill.

It does not appear that any further steps were taken under the sale. On the 16th of February, 1864, appellee leased the land to Hodgen, for the term of two years, commencing on the 1st of March, after the lease was made. Hodgen took possession of the land by a tenant, under the lease. In May, 1864, while he held under the lease, Hodgen purchased the master's certificate of Primm for $1700, as he alleges, and the master made to him a deed, the land not having been redeemed, and Hodgen claims the land under that deed. After the expiration of the lease, and on the 24th of July, 1866, appellee having learned that appellant was claiming to own the land, filed the bill in this case, which was subsequently amended. The prayer was, that the proceedings to foreclose the mortgage be set aside as fraudulent, or that the

decree in that case he reviewed and reversed ; or that he be permitted to redeem from the mortgage, and the master's deed to Hodgen be set aside.

On the hearing in the court below, a decree was rendered, finding that Hodgen was a trustee of appellee, in purchasing the master's certificate, and that upon being refunded his money, with interest, he convey the premises to appellee; that Hodgen should account for rents, but was entitled to pay for valuable improvements, taxes, etc. ; and ordered the master to take and state an account, which he did, and found appellee indebted to Hodgen in the sum of $1343.36, which was ordered to be paid, and on default that execution should issue.

The first and controlling question arising on this record is, whether the circuit court acquired jurisdiction of the person of appellee in the suit of Hill against him and others, to foreclose the mortgage from Hicks to Primm. If no such jurisdiction was acquired by the court, then the decree was void as to appellee. The statute has declared that a suit in chancery may be brought by filing a bill in the office of the clerk of the circuit court. The eighth section of the chancery act provides for the mode of publication, which is substituted for the service by summons. The fifth section authorises the clerk, on the filing of the bill, to issue a summons for the defendant. The sixth section declares what the summons shall contain, and the seventh the manner of service.

It will be thus seen that a summons can not issue until the bill is filed. It is only upon its being filed with the clerk that the suit is commenced, or the summons can issue. Such is the statutory requirement. This act regulates and establishes the practice in such cases, and it alone confers power on the clerk to act, and he must conform to its provisions. Until the bill is filed no suit is pending, and until it is commenced the clerk can neither legally issue process nor make publication. And if service is had on process issued before the bill is filed, or if publication is thus made, the court will fail to acquire

jurisdiction of the person of the defendant. In this the statute has made it different from a suit at law, as in that forum the statute has declared that suit shall be commenced by issuing a summons. We are clearly of opinion, that the affidavit and notice of publication were premature. Even if the affidavit might have been used after the bill was filed, still the notice published before the bill was lodged in the office of the clerk and filed by him, can not be regarded as legal or binding. The act, when it was performed, was unauthorized and nugatory. It follows, that there was not constructive notice, such as required appellee to regard it, or that gave the court jurisdiction of his person, and, hence, he was not bound by the decree.

Nor could the defect be cured by oral evidence. The file mark, endorsed by the clerk, imports verity, and can not be contradicted by verbal testimony. Such a practice has never prevailed. If a mistake was really made, the parties might, within a reasonable time, have applied to the court, on proper notice to the opposite party, for leave to the clerk to amend the file mark on the bill. But until such an amendment of the record was made, the date it indicates must be held conclusive. We are not at liberty to correct or obviate its effect by conjecture as to the neglect of the clerk to do his duty. He acts under the sanction of his official oath, and the obligation of his official bond, and we must presume that he did not so far disregard his duty, as to date the filing of the bill at a different date from that when it was deposited with him to be filed. The time of filing the bill was not and could not be disproved by the oral evidence.

Although McMullen, as the owner of the fee, may have been served, the decree could only operate on his interest in the premises. Appellee held a mortgage from McMullen to himself, for the purchase money, which, unquestionably, gave appellee the right to redeem from the Hicks mortgage. And it did not matter what decree was rendered against McMullen, so long as appellee's right of redemption remained unaffected

Hodgen, then, at most, purchased the mortgage given to Primm, when he received the master's deed, unforeclosed as to appellee. If he could redeem after the master's sale, from the Hicks mortgage, as against Primm, notwithstanding the decree and sale, Hodgen took the land subject to the same right of redemption. He was chargeable with notice that the court did not have jurisdiction of the person of appellee, and that as to him the decree was void, as he had to look through the decree in tracing title. Primm was unable to give any more title than he held, and the decree did not affect appellee's rights. It, then, follows, that Hodgen acquired certainly no more than Primm's rights under the mortgage, whatever they were, by the decree and sale, so far as it related to appellee's rights.

But under the evidence contained in this record, was appellee chargeable with notice of the existence of the mortgage, when he purchased of Hicks? It was not recorded, and, hence, he was not chargeable with statutory notice. And both he and Hicks swear, that he had no notice of its existence. And there is no positive testimony contradicting their testimony. It is true, John Wyatt thinks that appellee admitted he had notice, or, rather, says he understood him to admit that he had notice. We are inclined to think, that such evidence is not sufficient to overcome the positive evidence of the other two witnesses. It is, all know, an easy matter for a person to receive impressions, and to draw inferences from conversations, that are erroneous. He does not pretend to give the language of appellee, but simply says, he " understood Guttery to admit that he had a knowledge of the mortgage when he purchased the land." This is, at best, the mere understanding of the witness, and we are uninformed from what he derived his understanding. We are, therefore, clearly of the opinion, that there is not sufficient evidence that appellee had notice. It devolved on the person claiming under the mortgage, to prove that he was chargeable with

notice. It follows, that he was not required to redeem from this mortgage.

Was Hodgen the agent of appellee, or did he do any act by which he became the trustee of the latter? The mere fact that he held under him as his tenant, did not create the relation of trustee and *cestui que trust.* That, of itself, and independent of other circumstances, did not create the relation so as to prevent the tenant from buying in an outstanding title for his own use. In this case we see no facts that would create the relation. Appellee had not intrusted him with the duty of making a purchase of the mortgage or certificate of purchase, nor had he assumed the undertaking for appellee. Nor were their relations, in other respects, such as to make him a trustee, so far as we can see from this record. He then acquired Primm's rights, such as they were, no more, no, less. And unless farther and more satisfactory evidence of notice can be produced, we can see no right, as against appellee, to charge the land with this mortgage.

But the decree being void as to appellee in the former suit, and he not being liable to pay, or the land not being chargeable with the mortgage, has appellee any right to maintain this bill? We think he clearly may, to remove a cloud on his title. Here is a decree, void as to him, it is true, and a sale and deed made under the decree equally void, but still it is such as to deter some, and render others doubtful, in the purchase of his title. It is calculated to materially impair the price of the land if put upon the market, as all persons would expect that it would lead to litigation, costs and vexation. It, for that reason, is such a cloud as authorizes a court of equity to entertain jurisdiction for its removal. The court below should, therefore, have decreed that the decree, sale and deed were void, and enjoined the defendants from claiming or asserting title under them, but leaving Hodgen to assert any claim he might choose, under his purchase of the mortgage from Primm, his rights, of course, to depend upon whether he could

bring home to or charge notice upon appellee at the time he purchased the land.

It is insisted, that this suit was not brought in proper time. A suit to remove a cloud on a title is only barred like any other case in equity. The general statute of limitations had not barred the action. And if it were governed by the statute limiting a writ of error, treating this case as analogous to that proceeding, still it is not barred. In the case of *Lyon* v. *Robbins*, 46 Ill. 276, it was held, that a decree rendered on publication of notice, and when the defendant was not served with written notice of the decree, as provided by the statute, did not become final in fact, until three years from the time it was rendered, and a bill of review or writ of error might be brought at any time before the expiration of five years after it thus became final. In such case, then, the defendant has eight years from the date of a decree which is rendered on constructive notice, to bring error or to file a bill of review, unless it is made final at an earlier day by having a written notice of the decree served on him under the statute. If, then, this should be considered as a bill of review, the suit was brought within eight years, or five years after the decree became final, no notice having been served of the rendition of the decree, as provided by the statute.

The decree of the court below is reversed and the cause remanded.

*Decree reversed.*

Mr. JUSTICE SCOTT took no part in this decision.