QUINN PLUMBING COMPANY; INC., a Florida Corporation, *Appellant,* v. NEW MIAMI SHORES CORPORATION, a Delaware corporation, *Appellee.*

Division A.

Opinion filed August 1, 1930.

414

*James A. Dunn* and *Carl T. Hoffman,* for Appellant;

*George T. Clark* and *Clark & Ellis,* for Appellee.

STRUM, J.—A first mortgage upon real property was foreclosed and the property sold. A mortgagee who held a second mortgage on a small part of the encumbered land was not made a party to the foreclosure of the first mortgage. The property was purchased at the foreclosure sale by one not a party to either mortgage. This suit, brought by the purchaser at the foreclosure sale under the first mortgage, is for the purpose of disposing of the rights of the second mortgagee.

The first mortgage contained a conventional release clause which provided that the mortgagor could procure the release of parcels of the land upon the payment of specified amounts. This bill of complaint prays that the second mortgagee be required to redeem the lands covered by the second mortgage, by the payments of the amounts specified with reference thereto in the release clause of the first mortgage, in default whereof the second mortgagee's right to redeem be barred.

The Chancellor overruled a demurrer to the bill, from which order this appeal is taken.

The right to redeem is an incident to every mortgage and belongs to the mortgagor and those claiming under him. This right cannot be extinguished except by due process of law. After the foreclosure of a mortgage, redemption may be had by any person entitled to it who was not made a party to the suit. Bryan v. Kales, 162

U. S. 411, 40 L. Ed. 1020. The purchaser at such a sale takes the premises subject to the right of a junior mortgagee, who was not made party to the foreclosure of a prior mortgage, to redeem from the senior mortgage. Howard v. Milwaukee, etc., 101 U. S. 837, 25 L. Ed. 1081; Jones v. Williams, 71 S. E. 222, 36 L. R. A. (N. S.) 426; Morse v. Smith, 83 Ill. 396; Hodgden v. Guttey, 58 Ill. 431; Jones on Mortgages, (8th Ed.) Sec. 1342; Wiltsie on Mortgage Foreclosure (4th Ed.) Sec. 1054, 1149; 42 C. J. 357, 372.

It is well established in this jurisdiction that the purchaser of mortgaged property at a foreclosure sale, when for any reason the foreclosure proceedings are imperfect or irregular, becomes subrogated to all the rights of the mortgagee in such mortgage and to the indebtedness that it secured. Such purchaser becomes virtually an equitable assignee of the mortgage and of the debt it secured, with all rights of the original mortgagee, and becomes entitled to an action *de novo* for the foreclosure of such mortgage against all parties holding junior encumbrances who were omitted as parties to the foreclosure proceedings under which the purchaser bought. Crystal R. Lbr. Co. v. Knight Turp. Co., 69 Fla. 288, 67 So. R. 974, Ann. Cas. 1917D 574; Key West Wharf Co. v. Porter, 63 Fla. 448, 58 So. R. 599, Ann. Cas. 1914A 173; Meyer v. Florida Home Finders, 105 So. R. 267; Jordan v. Sayre, 29 Fla. 100, 10 So. R. 823. See also Dutcher v. Hobby, 12 S. E. R. 356, 10 L. R. A. 472, 22 A. S. R. 444; Johns v. Wilson, 180 U. S. 440, 45 L. Ed. 613; Burns v. Hiatt, 87 Pac. R. 196, 117 A. S. R. 157, 19 R. C. L. 635, 452.

As against a senior mortgagee, the only absolute right of a junior mortgagee is the right to redeem from the senior mortgage. Parker v. Child, 25 N. J. Eq. 41; Jones on Mortgages (8th Ed.) Sec. 1781. The right to seek a

marshaling of the security in appropriate cases is not absolute, but rests upon equitable principles.

When a first mortgage has been foreclosed, and a junior encumbrancer has not been made a party, the decree is valid as to those who were joined as parties, but of course is not binding upon, nor does it in anywise affect, the rights of the junior mortgagee who has been omitted. The rights of such omitted person remain precisely as they were before the proceedings were instituted. They are neither enlarged nor diminished by the defective foreclosure. McGough v. Sweetzer (Ala.), 12 So. R. 162. As to such omitted junior mortgagee the situation is the same as if no foreclosure had occurred. Key West Wharf Co. v. Porter, *supra;* Crystal R. Lbr. Co. v. Knight Turp. Co., *supra;* Wiltsie on Mortgage Foreclosure (4th Ed.) 1055.

The purchaser at such a foreclosure sale occupied the same position as the first mortgagee, having become equitably subrogated to his rights, which may be enforced by such purchaser against the junior mortgagee to the same extent as they could have been enforced in the original foreclosure, had the junior mortgagee been made a party thereto. The junior mortgagee may defend to the same extent as if the irregular foreclosure had not occured.

In the absence of countervailing equities, some of which will be mentioned hereafter, when a first mortgage has been foreclosed in a suit to which a junior mortgagee, through inadvertence, was not made a party, a purchaser in possession under the sale may maintain a suit to compel the junior mortgagee to exercise his right of redemption within a reasonable time, just as he could have been compelled to exercise it in the original foreclosure had he been made a party thereto, in default of which the right of redemption of the second mortgagee may be foreclosed and barred. Key West Wharf Co. v. Porter, Crystal R. Turp. Co. v.

Knight, *supra*; Parker v. Childs, 25 N. J. Eq. 41; Shaw v. Heisy, 48 Iowa 468; Nelson v. Bank, 202 N. W. 847; Manhattan Bank v. Wamego Bank, 176 Pac. R. 658, 42 C. J. 356; Jones on Mortgages (8th Ed.), Sec. 1781. There are instances, however, in which such a course would be inequitable. Morey v. City of Duluth, 69 Minn. 5.

If any fraud or *mala fides* was practiced in connection with the failure to make the second mortgagee a party, that might constitute a countervailing equity which would place the matter in an entirely different light, especially in this case in view of the extraordinarily large part of the proceeds of the sale which was devoted to "costs and expenses," which conceivably might have been reduced upon the objection of the junior mortgagee, so as to make the situation of his mortgage more favorable. If it were shown that the second mortgage was deliberately omitted as a party so as to deprive it of the opportunity (not the absolute right) of bidding the property up to an amount sufficient to cover its second mortgage, or to deprive it of the opportunity to contest the amounts devoted to "costs and expenses" in order to conserve proceeds available to pay off the second mortgage, an entirely different question might be presented. But no such contention is as yet advanced. The bill sufficiently alleges, and the demurrer admits, that the omission of the second mortgagee was due solely to inadvertence; that an abstract was procured preliminary to foreclosure, and that the second mortgage did not appear thereon; that the first mortgagee having no actual knowledge of the existence of the second mortgage, therefore, did not make the second mortgagee a party. Thus the omission of the second mortgagee as a party appears from the allegations of the bill to have been an innocent omission, at least one involving no bad faith.

Those considerations just mentioned become even less important in the present aspect of this case when the well established rule is considered that the second mortgagee who was not made a party can not, in a suit to require him to redeem or be foreclosed, be compelled to pay the costs or expenses of the foreclosure of the first mortgage. The amount which must be paid by such junior mortgagee in order to redeem is to be determined from the first mortgage *debt*, not from the decree of foreclosure to which he was not a party, and which is therefore not binding upon him. Jones v. Dutch, 92 N. W. R. 735; Wiltsie on Mortgage Foreclosure (4th Ed.), Sec. 1210; Jones on Mortgages, Sec. 1388.

Another countervailing equity which might conceivably be imposed to prevent the operation of the rule above stated would be the equitable right of the junior mortgagee, whose mortgage covers only a part of the premises covered by the first mortgage, to insist upon a marshaling of the securities. If that right were asserted and maintained (see 38 C. J. 1367, *et seq.*) complainant might be entitled only to a conventional decree of foreclosure by sale, the lands to be sold in such order as upon the evidence seems just and equitable. See Morey v. City of Duluth, 69 Minn. 5.

But the fact that complainant might not be entitled to the exact relief specifically prayed for is not ground for demurrer if upon the facts alleged and under the general prayer, complainant is entitled to any relief consistent therewith.

Upon the facts alleged, complainant is certainly entitled to a foreclosure *de novo* against the omitted junior mortgagee. The question is as to the propriety of the mode of relief selected. The bill of complaint alleges facts sufficient to justify relief by foreclosure and sale of that be hereafter determined to be the equitable course. So the

bill is not without equity. The nature of the relief to which the complainant is ultimately entitled depends upon the defense interposed by the junior mortgagee. If no countervailing equities are shown, a decree may be entered requiring the junior mortgagee to redeem or be barred. If the junior mortgagee had been joined in the original foreclosure an appropriate decree against it would have been to either redeem or be barred of its right of redemption. The same decree is sought in this bill. Such a decree would not be a decree of strict foreclosure which is unknown to our practice (Browne v. Browne, 17 Fla. 607, 623) because its effect would be *not* to divest the mortgagor of a right to redeem the legal title and to vest it indefeasibly in the mortgagee—that title being already in the complainant by reason of its purchase at the foreclosure sale which was valid as against the mortgagor—but its effect would be merely to extinguish a junior lien to which the legal title already in the complainant is subject. Manhattan Bank v. Wamego Bank, 176 Pac. R. 658. Any defense to which the junior mortgagee would have been entitled had it been joined in the original foreclosure, is open to it here. The form of the decree, whether requiring redemption or decreeing a foreclosure and sale, will abide the result of the defense interposed and maintained.

Since this complainant, purchaser at the foreclosure sale of the first mortgage, is entitled to maintain a suit *de novo* against the omitted second mortgagee to foreclose its right of redemption, there remains for consideration the basis of payment by the second mortgagee in order to effect such redemption, in the event that course be properly decreed on final hearing.

It is the well established rule, to which there are some exceptions, however, that a junior encumbrancer, or a junior owner of a part only of mortgaged premises, must

pay the whole amount of the mortgage debt in order to redeem. He can not compel a redemption *pro tanto,* for the reason that the first mortgagee has not agreed to separate his debt and security into parts. He is entitled to payment of the whole. The junior encumbrancer redeems from the mortgage, not from the foreclosure sale to which he was not a party. Wiltsie Mortgage Foreclosure (4th Ed.), Secs. 1054, 1071, 1088, 1145, and notes, 1199, 1209; Jones on Mortgages (8th Ed.), Sec. 1372; 42 C. J. 400; Bradley v. Snyder, 14 Ill. 263; 58 Am. Dec. 564; Knowles v. Rablin, 20 Iowa 101; Parker v. Child, 25 N. J. Eq. 41.

In a well reasoned case from Wisconsin, Green v. Dixon, 9 Wis. 532, it is held as an exception to the rule just stated, that *after foreclosure* a junior owner or encumbrancer who was not a party to the foreclosure of the senior mortgage is entitled to redeem from the senior mortgage upon paying such proportion of the mortgage debt as the value of the land covered by the second mortgage, or by the junior owner's deed, bears to the value of the entire mortgaged premises covered by the first mortgage. The reason assigned is that the purcaser, by electing to purchase under a defective foreclosure, subject to an outstanding junior interest of which he has actual or constructive notice, thereby elects to take an indefeasible estate in a part of the property and a defeasible estate in the other part covered by the junior mortgage, thus consenting to a separation of the two parts, so as to entitle the junior encumbrancer or owner to redeem his portion of the encumbered premises upon the proportionate basis just stated.

Other authorities, however, take the view that the general rule above stated applies to such a situation, so that the junior encumbrancer must pay the entire mortgage debt in order to redeem the premises in which he is interested, but when there are no intervening rights, he

thereby becomes equitably subrogated to the original rights of the first mortgagee (42 C. J. 450), even as against the purchaser at the foreclosure sale, for such purchaser has elected to purchase under a defective foreclosure which does not affect the original right of the second mortgagee to redeem from the first mortgage. McGough v. Sweetzer (Ala.), 12 So. R. 162; Martin v. Fridley, 23 Minn. 13. See also Evans v. Kahr, 57 Pac. R. 950, *Id.* 58 Pac. R. 467.

The view just stated has been heretofore definitely adopted by this Court. In Key West Wharf Co. v. Porter, *supra,* a first mortgage had been foreclosed and the property purchased by a third party. Certain persons to whom the mortgagor had conveyed portions of the mortgaged premises were not made parties to the foreclosure. The purchaser subsequently brought suit to foreclose against these junior owners. The foreclosure of a second mortgage was also sought in the same suit. The defendants answered that they were willing and ready to redeem from the lien of the mortgage so much of the land as was claimed by them proportionate to the value of the whole, and that it was not just or equitable to impose upon them the payment of the entire indebtedness. In disposing of an exception to that portion of their answer, this Court, speaking through Mr. Justice TAYLOR, held that there was no merit in the contention that there should be an ascertainment of the proportionate value of the portions of the land owned by the defendants and that they be allowed to redeem from the mortgagee by paying the proportionate value of their respective portions thereof. The Court said: "These portions of said land, as well as all the residue of said mortgaged tract, is bound for the payment of the whole of both mortgages, and the courts have no power to release any part of the land from the lien of the mortgages by affixing thereto a sum, less than the entire sum of the mortgages, which when paid shall release

such part from the lien of the mortgages. To redeem their portion of the land from these two mortgages they (the junior owners of part of the mortgaged land) will be required to pay the whole amount due upon both mortgages.'' In the respect under consideration, the situation of a junior mortgagee holding a mortgage on part only of the premises embraced in the first mortgage, would be the same as that of a junior owner of part of the mortgaged premises. Manhattan Bank v. Wamego Bank, 176 Pac. R. 658.

The rule just stated, however, that the junior mortgagee must pay the entire mortgage debt in order to redeem, is for the benefit of the senior mortgagee, and he or his purchaser at the foreclosure sale may waive his right to enforce redemption for the whole amount of the mortgage debt, and accept from one entitled to redeem a proportionate part of the debt, discharging the senior lien upon the portion so released. Wiltsie on Mortgage Foreclosure (4th Ed.) 1057, and cases cited; also Secs. 1066, 1071. This the complainant in this cause has done by offering to permit the junior mortgagee to redeem on the basis of the release clause in the first mortgage, which is permissible.

This complainant can not invoke this mode of redemption, however, to the exclusion of other modes to which the junior mortgagee may be entitled, nor to the exclusion of the potential equity of the junior mortgagee to seek a marshaling of securities. In other words, the complainant can not compel the junior mortgagee to accept the waiver, in the absence of laches or estoppel on the part of the junior mortgagee. The mode of redemption prayed for by the complainant, however, is a permissible one under the facts alleged in this bill, which the junior mortgagee may accept or not at its election. If the junior mortgagee desires to avail itself of its right to redeem from the first mortgage by payment of the entire mortgage debt, thereby becoming

equitably subrogated to all the rights of the first mortgagee, even as against this complainant, it may do so, but its election so to do must be asserted by its answer. Whether the junior mortgagee will insist upon other modes of redemption open to it, is a matter of defense. Likewise, as already stated, any equity in the junior mortgagee for a marshaling of security is matter of defense.

It has not escaped notice that the complainant does not specifically offer to convey its title to the defendant upon the redemption by the latter from the first mortgage of the portion of the lands in which it is interested upon the basis prayed for in the bill. Though it would have been well to have made such an offer, it is not indispensable to the equity of the bill. Such a redemption, after foreclosure and sale, by the junior mortgagee, who is under no legal *obligation* to redeem, amounts not only to a redemption, but as against the purchaser who is complainant here, amounts to a purchase of the rights acquired by the purchaser at the sale under the senior mortgage. It is unnecessary therefore that complainant offer to convey as such a redemption by the junior mortgagee would, by operation of law, invest in him indefeasibly the title of the *purchaser* at such sale. See McNutt v. Nuevo, 140 Pac. R. 6; Franklin v. Jameson, 109 N. W. R. 56; Briston v. Hershey, 95 Pac. R. 1040; Wemple v. Yosemite, 87 Pac. R. 280; Jones on Mortgages (8th Ed.), Sec. 1347. In order to make the decree fully effective, and in order to clear the title of its present dilemma, it would be proper for the chancellor in his decree to require the complainant to convey to the defendant by special warranty deed upon redemption by the defendant in accordance with the decree, for the reason that the complainant purchased subject to the defendant's second mortgage, with constructive notice thereof, and subject to the right of redemption from the

first mortgage, which mortgage has now been foreclosed as against the mortgagor, and this complainant has succeeded to the mortgagor's title rights by virtue of being a purchaser at the foreclosure sale. Therefore, if the defendant redeems as against this purchaser, he would not only acquire all the purchaser's rights by operation of law, but it would also be proper to decree a specific conveyance by such purchaser upon a proper redemption by the junior mortgagee.

The order overruling the demurrer is affirmed.

WHITFIELD, P. J., AND BUFORD, J., concur.

TERRELL, C. J., AND BROWN, J., concur in the opinion and judgment.

ELLIS, J., dissents.

ELLIS, J., (dissenting):

In November, 1924, Shoreland Company, a corporation, executed a mortgage to Bay View Estates Corporation to secure the payment of a debt of one million one hundred fifty thousand dollars. The mortgage described many tracts of land numbered from one to thirty-three inclusive. The mortgage and notes were assigned by the Bay View Estates Corporation to the Biscayne Trust Company on May 9, 1925, which company on May 13, 1927, assigned them to the Third Mortgage Corporation.

Subsequently to the execution of the mortgage the Miami Shores Company acquired title to the encumbered lands. This transaction occurred in March, 1925. On January 14, 1927, the Miami Shores Company executed to Quinn Plumbing Company, Inc., a corporation, a mortgage on lots numbered 10 to 14 inclusive of Block 25, Miami Shores,

according to a plat recorded in the public records of Dade County, to secure a debt of $35,954.53, evidenced by five promissory notes. The property covered by this mortgage is included in tract numbered 23 of the original mortgage.

On May 14, 1927, the Third Mortgage Corporation begun its suit against the Shoreland Company and Miami Shores Company to enforce the original mortgage and obtained a final decree on January 6, 1928. The Quinn Plumbing Company, Inc., the holder of the second mortgage on Lots 10 to 14 of Block 25, Miami Shores, was not made a party to the suit.

The property described in the original mortgage was sold under decree of the court to the "New Miami Shores Corporation" for the sum of $590,000. The amount decreed to be due to the Third Mortgage Corporation was $493,292.42 with interest as of December 22, 1927. The proceeds of the sale after the payment of costs and expenses of the foreclosure proceedings, were applied upon the amount decreed to be due to the Third Mortgage Corporation, leaving a balance due to that corporation from Shoreland Company and Miami Shores Company in the sum of eighty-eight thousand five hundred twenty dollars and fifty-one cents.

There appears to be some errors in the statement of this transaction as it appears in the bill of complaint in the instant case. The balance due the Third Mortgage Corporation should be $118,390.51, even then the "costs and expense of said foreclosure proceedings" seem to have amounted to the sum of $245,098.09.

In April, 1928, the New Miami Shores Corporation exhibited its bill in chancery in the Circuit Court for Dade County against Quinn Plumbing Company, Inc., in which the facts as stated in substance above were alleged and in which the further allegation was made that the Shoreland

Company mortgage contained a provision to the effect that the mortgagor should be entitled to secure the release and discharge of any of the property mortgaged from the lien of the mortgage "upon payment to the mortgagee of a standard partial release price upon the lots designated as per plats of said entire property; that said mortgage provides for the release of Lots 11 to 14, of Block 25, Miami Shores, upon the payment to the mortgagee of the sum of $2,116.40, for each lot required or asked to be released, and the sum of $2,180.28 for the release of Lot 10, Block 25, Miami Shores."

These lots constitute the property covered by the mortgage to the Quinn Plumbing Company, Inc., and constitute part of the South ½ of the Southwest ¼ of the Northwest ¼ of the Southwest ¼ of Section 6, Township 53 S., Range 42 East, which was subdivided into lots and block and with other lands so subdivided comprised the subdivision known as Miami Shores. To obtain a release from the Shoreland Company mortgage of the lots covered by the mortgage to Quinn Plumbing Company, Inc., would require the payment to the mortgagee or its assigns in the original mortgage of the sum of $10,645.88. The special prayer of the bill in the instant case is that the Quinn Plumbing Company, Inc., be required to pay to the complainant that sum of money at eight per cent interest and in default of such payment that the defendant and all persons claiming under it be barred and foreclosed of and from all right, title and interest in and to the property described in said mortgage and every part thereof, which language refers to the property described in the Quinn Plumbing Company, Inc., mortgage. There is also a prayer for general relief and for summons in chancery.

The defendant demurred to the bill upon several grounds which in substance were: first, there was no indebtedness

due from the defendant to complainant; second, that the defendant was not a party to the foreclosure proceedings recited in the bill; third, that the allegations of the bill constituted no grounds for a foreclosure of the original mortgage on a portion only of the lands described therein as against the defendant; fourth, that the defendant never agreed to ''pay the indebtedness for which decree is sought'' and, fifth, that the complainant is not entitled to a foreclosure of the mortgage ''against the lands described in the bill of complaint.'' The demurrer was overruled and the Quinn Plumbing Company, Inc., appealed.

The complainant's theory seems to be that as purchaser of the property under the foreclosure sale it became subrogated to the rights under the Shoreland Company mortgage of the Third Mortgage Corporation which acquired the mortgage from the Biscayne Trust Company, which acquired it from the Bay View Estates Corporation, the original mortgagee; that being subrogated to such rights it may compel the Quinn Plumbing company to exercise its right of redemption from the lien of the first mortgage by paying to the complainant the sum which under the terms of the first mortgage the mortgagor would have been required to pay to the original mortgagee to redeem Lots 10 to 14 of Block 25 from the lien of the first mortgage.

The right to so redeem those lots was a right reserved to the mortgagor which was foreclosed in the suit to foreclose that mortgage. If the right ever existed in the junior mortgagee, the defendant in the instant case, it existed under the principle that by paying such sum to the original mortgagee the junior incumbrancer would be subrogated to the first mortgagee's lien upon the lots for a proportional part of that creditor's claim on the indebtedness against the mortgagor. So that by such redemption

the junior lienor would hold a first lien upon the lots as security for the payment of the indebtedness to it plus a proportional part of the indebtedness held by the first mortgagee. But the right to redeem is to satisfy and remove the lien. The rights to foreclose and to redeem afford mutuality and neither can exist without the other. See Chaires v. Brady, 10 Fla. 133; Connor v. Connor, 59 Fla. 467, 52 So. R. 727.

So if the junior lienor had redeemed the lots from the lien held by the first mortgagee and been subrogated *pro tanto* to the first mortgagee's lien upon those lots the mortgagor would still have had the right to redeem which would not have been effective unless it exercised the right of redemption from the lien of the second mortgage. But the right to redeem is optional in the junior mortgagee and if he could have been compelled in equity by the first mortgagee to exercise that right the Third Mortgage Company waived its right to compel such redemption by the foreclosure proceedings in which it did not make the junior mortgagee a party.

Now the purchaser of the premises at the foreclosure sale, the complainant in this case, acquired only such title and rights as the mortgagor and its grantee had and became subrogated to the rights of the first mortgagee to perfect any errors which may have rendered the foreclosure proceedings void or voidable. In such case the purchaser becomes an equitable assignee of the mortgage and of the debt it secured where at the sale he paid the full amount due on the decree of foreclosure. See 25 R. C. L. 1357.

The right which the mortgagor had before foreclosure of the first mortgage is the right to redeem the land from the lien of the junior mortgage, but that is not what the bill seeks. It seeks to compel the junior lienor to redeem the land from the lien of the first mortgage which has be-

come merged in the title acquired by the purchaser. If the junior lienor redeems the land from what does he redeem it? It is not the theory of the bill that by paying such sum to the complainant the latter is divested of title to the land which becomes vested in the defendant, nor is there any offer to convey the title to the defendant in such case which if it could affect the complainant's right at all it would be the part of equity to do.

The failure of the Third Mortgage Corporation to make the Quinn Plumbing Company, Inc., a party in the foreclosure proceedings was its own error which entailed no liability upon the defendant in this case. The purchaser at the foreclosure sale had constructive notice of the existence of the second mortgage and was charged with notice that the holder of it was not made a party to the proceedings. It was not a necessary party, it is true, but by making it a party some inconvenience could have been avoided.

A second incumbrancer who is not made a party to foreclosure proceedings in the enforcement of a prior mortgage is only affected and can only complain when there is a surplus of proceeds from the foreclosure sale after paying the prior lien. His right to the surplus cannot with propriety arise until it shall be ascertained that there is a surplus and this cannot be shown before the mortgaged premises have been sold and the debt of the prior incumbrancer with all costs fully discharged. See Wilson & Herr. v. Haywood, 6 Fla. 171; Rich v. Eichelberger, 13 Fla. 169.

Obviously if the proceeds of the sale were more than sufficient to pay the prior debt and costs or the property sold subject to the second mortgage, the holder of the second lien would be required to pay nothing in order to redeem.

The rule is very general in the United States that a junior mortgagee is not a necessary party to a foreclosure

proceeding of a real estate mortgage so far as the juris-. diction of the court to render a decree of foreclosure binding upon all parties to the proceedings is concerned. . He is however a necessary party in order to foreclose and bar any right of redemption he has in the property by virtue of his lien and unless made a party his rights are generally not affected by a decree of foreclosure and sale thereunder. See Jones v. Williams, 155 N. C. 179, 71 So. E. R. 222, 36 L. R. A. (N. S.) 426 n; 19 R. C. L. p. 530.

Under the rule generally obtaining .the purchaser at a foreclosure sale in a proceeding to enforce a prior mortgage.when the junior encumbrancer was not made a party takes the title .subject to the lien of the junior incumbrancer. Jones v. Williams, *supra*.

In Florida, however, the doctrine was early announced that the second incumbrancer is only affected and can only complain where there is a surplus after paying prior liens.

If the second mortgagee had desired to redeem. the property covered by its mortgage from the lien of the first it would seem under the circumstances of the transaction that it might have done so by paying that proportion of the mortgage debt ˙remaining due at the time of such redemption which the value of the property covered by the junior lien bore to all the property covered by the. first mortgage. The equities of the case would seem to require the application of the more liberal rule of. redemption. See Sutherland v. Tyner, 72 Iowa 232, 33 N. W. R. 645.

The appellee contends that its bill in this case is one for a strict foreclosure of the second mortgage held by the Quinn Plumbing Company, Inc.; that as the foreclosure proceedings of the first mortgage were irregular, imperfect or void the complainant, the purchaser of the property, became subrogated to the rights of the original mortgagee; that it became thereby virtually an equitable assignee of

the first mortgage and of the debt it secured. See Jordan v. Sayre, 29 Fla. 100, 10 So. R. 823; Key West Wharf & Coal Co. v. Porter, 63 Fla. 448, 58 So. R. 599; Crystal River Lumber Co. v. Knight Turpentine Co., 69 Fla. 288, 67 So. R. 974; Meyer v. Florida Home Finders, 90 Fla. 128, 105 So. R. 267.

Assuming that the failure to join the junior incumbrancer as a defendant in the foreclosure proceedings of the first mortgage was such an imperfect or irregular proceeding as to subrogate the purchaser at the sale to the rights of the first mortgagee, the action cannot be a bill to foreclose the first mortgage as against the lien of the second unless the owner of the title to the property is made a party defendant. As the owner of the title is the complainant it would be an action to foreclose the mortgage against itself which would be in effect a suit to compel redemption of the second mortgage. The doctrine of strict foreclosure of a mortgage does not obtain in this State. The doctrine rests upon the theory that the mortgagee being vested with the title to the land subject to defeasance may compel the mortgagor to redeem or in default the title to the property becomes absolute in the mortgagee. It was a doctrine which originated in the reign of Charles I by which mortgagees asked to be relieved of the *mortgagor's* equity of redemption. In this country, however, it has long since fallen into disuse and in some states it was never used. See Lightcap v. Bradley, 186 Ill. 510, 58 N. E. R. 221; Davis v. Holmes, 55 Mo. 349.

Assuming that the purchaser of the property at the foreclosure sale may obtain an action to compel the junior mortgagee to redeem the property from the lien of the first mortgage the basis upon which such redemption may be accomplished is not properly laid in the bill upon which the relief is sought.

We are not unmindful of the general rule that a junior mortgagee of a part of the mortgaged premises may redeem only on payment of the entire mortgage indebtedness. The property covered by the junior mortgage in extent and likewise probably in value constituted an inconsiderable portion of the entire estate. The debt due to the junior incumbrancer was less than a thirty-second part of the debt due to the first encumbrancer and less than one thirteenth of the balance found to be due by the chancellor to the foreclosure proceedings.

Although the property brought nearly ninety-seven thousand dollars more than enough to pay the balance due that amount and approximately one hundred and forty-eight thousand three hundred dollars more were expended in the payment of "costs and expenses of said foreclosure proceedings." If the junior incumbrancer had been made a party to the proceedings it would have had the right to question the apparently extravagant allowances for "costs and expenses" and may have succeeded in showing that a sufficient surplus existed from the proceeds of the sale to pay a considerable portion of his claim.

In view of these circumstances, I think the bill is without equity and that the demurrer should have been sustained.