WIGGINTON, Judge.
Plaintiffs in foreclosure of a vendor’s lien bring this appeal to review an order sustaining objections of defendant Harold D. Ellzey to confirmation of a judicial sale of the subject property held pursuant to the final decree, at which plaintiffs were the successful bidders. The order also directed a resale of the property. The sole question for determination is whether the chancellor abused his discretion in the premises.
Plaintiffs sold approximately 20 acres of land to Roger McElhiney by contract for deed dated July 31, 1964. The purchasers *493 began constructing a residence thereon but abandoned the property before completing either the construction or their payments under the contract. Meantime, thirteen suppliers of materials and labor, including ap-pellee Ellzey, filed claims of liens aggregating $8,147.35. Appellants’ suit to foreclose the contract for deed joined these lienors as defendants, and all except one, against whom a decree pro confesso was entered, answered the complaint through their attorneys.
The case proceeded to final hearing and on August 14, 1964, a final decree was entered, finding that plaintiffs held a first lien on the land for the amount adjudged to be due for the unpaid balance of the contract for deed and in and about the suit, and held that the liens of the defendants were inferior thereto. It provides that in default of payment, the property should be sold at public outcry on October 26, 1964, and the proceeds applied on account of the decree and costs.
At the final hearing the defendant lienors answering the complaint were represented by counsel. When the court announced its findings and conclusions, the attorneys representing the defendants had a discussion with plaintiffs’ attorney and expressed a desire on behalf of their clients to pay off and take over plaintiffs’ claim and/or to purchase the property at the foreclosure sale. Plaintiffs’ attorney informed them that plaintiffs did not intend to put any more money into the property, and at the sale would not bid in excess of the amount due them under the final decree; and further informed them that if prior to sale they would pay to plaintiffs the amount due under the decree, plaintiffs would assign their interest thereunder to the defendants or their nominee. Defendants selected John Montgomery Greene, Esquire, counsel for one of their number to act on behalf of all who desired to work toward that end. In order to afford defendants time in which to raise the money to pay plaintiffs’ claim, it was agreed that the final decree set the sale for a later date than normal, and the same was fixed two months and twelve days after date of the decree.
The only party defendant appearing on this appeal is appellee Harold D. Ellzey. His attorney was present at the final hearing and participated in the above-related transactions. It is obvious, therefore, that plaintiffs were entitled to the benefits of the final decree according to its plain terms and conditions, and it is seen that no valid “agreement” was entered into modifying their rights thereunder.
Within ten days prior to the sale date, plaintiffs’ attorney on several occasions discussed the forthcoming sale with Mr. Greene, the attorney acting for all of the defendants. The latter prepared and delivered to plaintiffs’ attorney a quitclaim deed and an assignment of plaintiffs’ claim under the decree, naming himself therein as trustee, which documents were contemplated to be executed by plaintiffs and delivered prior to the sale in exchange for payment of the amount due plaintiffs under the decree. Plaintiffs executed the documents, and three days before the sale date their attorney contacted Mr. Greene and offered to deliver the executed deed and assignment in exchange for payment as aforesaid. Mr. Greene advised that all of the money due was not then available but that it would be prior to the sale scheduled for 11:00 a. m. on October 26, 1964. At approximately 10:00 a. m. on that date plaintiffs’ attorney, having heard nothing further from Mr. Greene, contacted his law office and finding him absent, informed his personal secretary that it was necessary for the money to be paid to plaintiffs prior to the sale if the defendants wanted the deed and assignment delivered; and also advised the secretary that if the moneys due the plaintiffs were not so paid, he would buy the property in at the sale for plaintiffs’ account. Plaintiffs’ attorney made a second attempt by phone to contact Mr. Greene prior to the sale and again finding him absent, repeated the message to his secretary.
Plaintiffs’ attorney then proceeded to the place of sale and when the time for the sale arrived, there appeared, among others, the said John Montgomery Greene, Esquire, and *494 J. R. Blaclc, Esquire, who together were attorneys of record for ten of the defendant lienors. Immediately prior to the sale the attorneys for defendants announced to plaintiffs’ attorney that their parties had not been able to raise the necessary moneys with which to pay plaintiffs’ claim under the decree and, therefore, would not undertake to bid the property in at the clerk’s sale. Plaintiffs’ attorney informed them that the sale would have to proceed according to the published notice, and that he would undertake to bid the property in for plaintiffs’ account. Accordingly, .plaintiffs’ attorney bid the property in for plaintiffs at a bid price of $4,812.02.
Appellee Harold D. Ellzey, a defendant junior lienor, filed objections to confirmation of the sale, alleging, in substance: (1) that the sale was held pursuant to an agreement whereby (unnamed) “participating defendants” were to purchase the subject property for the face amount of the final decree; (2) that defendant Ellzey deposited with his attorney (apparently his attorney of record, H. C. Dozier, Esquire) $531.05 constituting his pro rata share (the basis of prorating is not shown) of the amount required to purchase said property; (3) that said Ellzey was informed prior to the sale (it is not said by whom) that all money required was available and that the property would be bought in at the sale in the name of John Montgomery Greene, Esquire, as trustee for the benefit of all participating (unnamed) defendants; (4) that the sale was held and plaintiffs, without notice, repudiated the so-called agreement and purchased the property in violation thereof; (5) that the defendant was thereby deprived of an opportunity to bid at such sale and protect his lien; and (6) that defendant was entitled to notice of repudiation of said “agreement” so that he might have been afforded an opportunity to bid at said sale and thereby protect his lien.
/
There is no claim that the amount of plaintiffs’ bid was inequitable. The final decree is not challenged in any particular. As heretofore stated, the defendants’ liens were decreed to be inferior to the lien of the plaintiffs and plaintiffs were authorized to become bidders for the purchase of the property at the sale. The sale date was fixed by the decree, notice thereof was given in accordance with the decree and the statutes, appellee was represented by counsel who participated in the setting of the date for the sale, and it is not made to appear that any undue advantage whatever was taken of appellee in the premises. Appellee does not question the price bid by plaintiffs or state that he is ready on another sale to pay more than the price bid by plaintiffs.[1] We take judicial notice that a forced sale seldom brings the property’s true value,[2] but that is not a controlling factor upon the question of the purchaser’s right to confirmation.
As a junior lienholder the defendant appellee, along with others in his class, had the right to redeem at any time prior to the sale, irrespective of whether plaintiffs were willing to cooperate in that regard.[3]
We recognize that the chancellor has the power, in the exercise of a sound judicial discretion, to confirm or set aside a foreclosure sale. However, where the sale is regular in all respects, including proper notice and sale for an equitable cash amount, the sale should not be set aside unless a defect therein prejudices the rights of the complaining party.[4] There is no suggestion that the instant sale did not meet those standards.
*495 The so-called “agreement” relied on by appellee was not supported by a valuable consideration. Furthermore, it was not reduced to writing and subscribed by the affected parties or their attorneys against whom it is asserted, nor does it appear that it was made before the court and promptly made a part of the record or incorporated in stenographic notes of the proceedings, as required to give efficacy to such transactions.[5] The importance of adhering to this rule is made evident in this proceeding. It operates not only to protect the parties against the uncertainties and misunderstandings that so often accompany ad lib transactions of the character here involved, but operates with equal vigor to protect the trial judge against many vexatious problems that arise where the litigants arrive at a point of irreconcilable dispute as to who agreed and to what and when.[6]
In final analysis, the appellee here seeks another foreclosure sale simply in order that he may have a second opportunity to become a bidder or, in the meantime, to further negotiate with the appellants in pursuit of some uncertain objective.
Accordingly, the order appealed must be and it is hereby vacated.
We are not unmindful of the recent decision rendered by the Third District Court of Appeal in the Robinson case [7] which affirmed a post decretal order of a chancellor setting aside a mortgage foreclosure sale. That decision was predicated upon the affirmative finding that the need for a resale was attributable to the actions of the plaintiff. No such evidence appears in the record in the case sub judice.
The sale of the subject property to appellants is confirmed in all respects, and this cause is remanded for such other proceedings, if any, as may be consistent herewith and proper under the final decree of foreclosure.
STURGIS, Chief Judge, and CARROLL, DONALD K., J., concur.

. Ruff v. Guaranty Title & Trust Co., 99 Fla. 197, 126 So. 383 (1930); 22 Fla. Jur., Mortgages, § 366.

. Maule Industries, Inc. v. Seminole Rock and Sand Company, 91 So.2d 307 (Fla.1956); 22 Fla.Jur., Mortgages, § 370.

. Quinn Plumbing Co. v. New Miami Shores Corporation, 100 Fla. 413, 129 So. 690, 73 A.L.R. 600 (1930); 22 Fla. Jur., Mortgages, § 407.

. Ruff v. Guaranty Title & Trust Co., supra note 1.

. Rule 1.5(d), F.R.C.P., 30 F.S.A.

. Cf. Morris v. Truax, 152 So.2d 515 (Fla.App.1963); Beck v. Humkey, 146 So.2d 613 (Fla.App.1962); Cooke v. Cooke, 126 So.2d 160 (Fla.App.1961); Spencer v. Florida-Georgia Tractor Company, 114 So.2d 466 (Fla.App.1959).

. Robinson v. Phillips, etc., 171 So.2d 197 (Fla.App.1965). Opinion filed February 2, 1965.