ELMANDO SEWER, Appellee

v.

CLIFTON MARTIN, et al., RITA MARTIN,
Appellant

No. 74-1823

United States Court of Appeals

Third Circuit

Argued December 2, 1974

Filed March 3, 1975

ARNOLD M. SELKE, ESQ. (GIBBS & SELKE), St. Thomas, V.I., *for appellant*

RONALD T. MITCHELL, ESQ. (PALLME, ANDUZE & MITCHELL), and FREDERICK D. ROSENBERG, ESQ. (BAILEY, WOOD & ROSENBERG), St. Thomas, V.I. *for appellee*

Before SEITZ, *Chief Judge*, VAN DUSEN and ROSENN, *Circuit Judges*

## OPINION OF THE COURT

SEITZ, *Chief Judge*

Prior to December 6, 1967, plaintiff Elmando Sewer was the owner of 25 Rjerings Gade, St. Thomas. Defendant-appellant, Rita Martin, then the wife of Clifton Martin ("Martin"), owned the adjacent lot on which a commercial building was located. In 1967 Martin began negotiations with plaintiff for the purchase of 25 Rjerings Gade, on which plaintiff lived and from which he received rental income of $105.00 per month.

511

After several unsuccessful efforts, Martin and plaintiff reached agreement on a plan whereby plaintiff would sell the property for $12,000 plus support for the rest of his life. On December 6, 1967, plaintiff executed a deed conveying the lot to the defendant alone for $12,000 "and other valuable consideration." On December 8, 1967, plaintiff and Martin executed a separate agreement ("December 8 agreement") in which Martin "for valuable consideration received" promised to pay plaintiff $200.00 per month from January 1, 1968, until his death and to provide him with an efficiency apartment "or similar habitation" for life. Martin also agreed to pay $2,000 to a nominee of plaintiff upon the latter's death.

The Martins obtained the $12,000 consideration recited in the deed through a loan from the Virgin Islands National Bank for which they were jointly liable, and the defendant executed a mortgage on the property to secure repayment of the loan. Only $11,389.60 was, however, paid to plaintiff. It appears that defendant, divorced from Martin in 1968, assumed sole responsibility for the monthly mortgage payments of $126.00 payable presumably from the same $300.00 per month which she received in rent from the property.

The Martins initially permitted plaintiff to remain in his former home for some months. Martin thereafter provided plaintiff a room for approximately one year in a guest home which Martin was leasing. When his lease expired, Martin persuaded his wife to allow plaintiff to occupy a room in the building owned by Mrs. Martin on the adjacent lot, 26 Rjerings Gade. There plaintiff remained, without water or electricity, until March 1971 when defendant sought to evict him.

Martin failed from the outset to honor his obligation to pay plaintiff $200.00 per month. By court actions filed against him in 1968 and 1969, plaintiff recovered $1,775.00

of the money owed him. Martin has made no other monthly payments.

In November 1970 plaintiff instituted this action in the District Court of the Virgin Islands against defendant and Martin seeking cancellation of the deed or an order compelling Martin to fulfill his promises. The district court found that the consideration for the conveyance agreed to by plaintiff and Martin was $12,000 plus the covenants of the December 8 agreement, but that the defendant had been unaware of any promises beyond the $12,000 cash payment until plaintiff first sued her husband for arrearages in the monthly payments. Furthermore, the court found that Martin was not acting as an agent of his wife in concluding the December 8 agreement and that therefore the defendant was not personally liable to Sewer on the contract. The court concluded, however, that defendant could not hold the property free of the promises made to secure the conveyance and held the December 8 agreement to be "in the nature of a purchase money mortgage" and to constitute a lien against the property. Rescission was denied plaintiff because he was unable to return the cash payment.

On May 30, 1973, the district court entered judgment for the plaintiff (1) against defendant and Martin for $610.40, the unpaid portion of the $12,000 cash payment, plus interest from December 6, 1967, and (2) against Martin alone in the sum of $10,825 for arrearages on the monthly payment through March 1973. Martin was ordered to fulfill his obligation to provide an efficiency apartment for the remainder of plaintiff's life. The court foreclosed the "purchase money mortgage" and authorized the sale of 25 Rjerings Gade to satisfy judgment. Attorney's fees of $500.00 were awarded to plaintiff.

Defendant Rita Martin alone filed a motion to amend judgment. Her motion was denied by the district court

on May 8, 1974, and she filed notice of appeal from that order. On appeal, she challenges only establishment and foreclosure of the lien and requests reduction of the attorney's fees if the lien is voided.

Our review of the record convinces us that substantial evidence supports the district court's determinations that the covenants of the December 8 agreement were an integral part of the consideration agreed to by plaintiff and Martin and that defendant was unaware of the terms of the agreement at the time it was executed. The question to be resolved is whether, given that defendant lacked knowledge of and had no personal liability under that contract, she nevertheless holds the property subject to a lien in favor of plaintiff to secure enforcement of the promises contained therein.

A grantor's or vendor's lien[1] of the nature recognized by the district court in this case was early established in England and is recognized in the majority of American jurisdictions. 4 J. Pomeroy, Equity Jurisprudence § 1249 (5th ed. 1941) ; 55 Am. Jur. Vendor and Purchaser § 462. The lien is the equitable right which a grantor who takes no other security retains to subject the land conveyed to the payment of the purchase price. So long as a portion of the purchase price remains unpaid, the law presumes the existence of a lien unless the terms of the agreement or attending circumstances demonstrate that the parties intended no lien to be present. Zumwalt v. Goodwin, 133 F.2d 984 (10th Cir. 1943).

No court decision or statute speaks to the existence of such a lien in the Virgin Islands. However, the lien is widely recognized in American law and is a salutary re-

---

[1] We will use the term "grantor's lien" throughout our discussion since it is clear that plaintiff had conveyed full legal title plus possession to defendant and does not occupy the status of a vendor who holds legal title subject to a duty to convey. Many cases, however, use the terms "grantor's lien" and "vendor's lien" interchangeably. See 4 J. Pomeroy, Equity Jurisprudence § 1249 n. 7 (5th ed. 1941).

medial device to do equity where necessary. We conclude that such a remedy may be invoked in the courts of the Virgin Islands in appropriate circumstances.[2] See 1 V.I.C. § 4 (1967).

Defendant challenges recognition of the lien and its subsequent foreclosure in this case on the following grounds: (1) she was a bona fide purchaser for value and as such took the property free of any implied lien; (2) plaintiff waived any lien he might have had by taking the personal security of a third person, Martin, and by twice suing Martin individually on the December 8 agreement; and (3) the district court erred in foreclosing the lien without joining other lienors of record of the property.

*Defendant as a bona fide purchaser for value*

Defendant contends that her status with respect to the purchase of 25 Rjerings Gade is that of a bona fide purchaser for value and without notice and that, therefore, she holds title free of any implied grantor's lien. See Hunter v. Hunter, supra; 4 J. Pomeroy, supra, § 1253.

A review of the record in this case compels the conclusion that defendant's status cannot be equated to that of a bona fide purchaser even though she has accepted responsibility for repaying the loan that provided the recited consideration for the property and therefore is not a mere volunteer receiving a gift from her husband in the conveyance to her. Although defendant may have had no direct knowledge of the contract signed by her husband, we believe for the reasons hereafter noted that she acquired title to the property subject to the conditions agreed to by her husband.

In everything but the taking of legal title, the purchase of 25 Rjerings Gade was Martin's undertaking. He

---

[2] Such a grantor's or vendor's lien is always inferior to the rights of subsequent bona fide purchasers and mortgagees without notice. Hunter v. Hunter, 327 Mo. 817, 39 S.W.2d 359 (1937).

initiated contact with plaintiff for the purchase, and on only one occasion did defendant even attend a meeting with her husband and plaintiff. Martin prepared the deed conveying the property to his wife and so completely controlled the bank financing that his wife was not even aware of the term of the mortgage which she executed or whether the mortgage covered property other than 25 Rjerings Gade. According to her testimony at trial, "Clifton handled just about everything and I did not question anything."

Under these circumstances it would be most inequitable to conclude that simply because the Martins chose to take title in the name of the wife alone, plaintiff must be denied the right to force payment of the promised consideration by claiming a lien on the property. Defendant's total abdication of all negotiating responsibility to her husband precludes giving her title free of the duty to fulfill the promises made to secure conveyance of plaintiff's home.

### Waiver of the lien

We have no cavil with the proposition that accepting the security of a third person may work a waiver of the grantor's lien on the theory that the grantor thereby demonstrates that he no longer looks to recovery of the land as his sole security. Slide and Spur Gold Mines v. Seymour, 153 U.S. 509 (1894); 4 J. Pomeroy, supra, § 1252. In this case, however, the obligations assumed by Martin were not for the purpose of securing payment of the purchase price; they were themselves a significant portion of the consideration given by one who was a co-purchaser with his wife of the property in all but the name in which legal title was taken. Under these circumstances we find no waiver of the implied lien by taking additional security.

Neither does plaintiff's filing of two suits against Martin constitute a waiver of the lien. Such action by the grantor to recover the consideration for his conveyance is

but one course available to him when the purchase price is not paid. If such a suit does not lead to a recovery of the entire consideration, this does not preclude enforcement of a lien to recover the remaining portion of the purchase price. Pariseau v. Trinity Bldg. Co., 254 Mich. 213, 236 N.W. 239 (1931); Troast v. Anjou, 172 N.Y.S. 383 (S.Ct. 1918).

*Failure to Join Other Lienholders*

■ Defendant contends that even if the district court properly found an implied grantor's lien in this case, it violated 28 V.I.C. § 532 (1962) in ordering foreclosure of the lien without joining other parties having liens against the property. That section provides that while persons holding liens prior to that being foreclosed "may" be joined in the foreclosure suit, one holding a lien "subsequent to the plaintiff upon the same property . . . shall be made a defendant in the [foreclosure] suit." Two other lienholders were named by the defendant in her motion to amend judgment: (1) the Virgin Islands National Bank, which holds a mortgage recorded December 7, 1967, and (2) Everett Birch who holds of record a $4,000 mortgage dated December 1, 1968. Plaintiff challenges defendant's standing to raise this objection.

We need not reach argument advanced by defendant respecting her standing because we are of the opinion that, in any event, her interest in the proceeds of the judicial sale provides her with sufficient standing to insist that the district court determine whether any other lien is inferior to plaintiff's and the holder thereof subject to the mandatory joinder requirement of 28 V.I.C. § 532. Defendant has an interest in insuring that the highest possible price is bid for the property since she will have a claim to any proceeds beyond those necessary to extinguish plaintiff's lien. Her interest would be prejudiced by a sale conducted

517

pursuant to a foreclosure without joinder of junior lienors, since their right of redemption would remain unimpaired, Quinn Plumbing Co. v. New Miami Shores Corp., 100 Fla. 413, 129 So. 690 (1930), and would undoubtedly chill the bidding. See Gould v. Wheeler, 28 N.J. Eq. 541 (1877). Under the circumstances of this case, defendant is entitled to a determination of the priority of liens on 25 Rjerings Gade and to joinder of persons holding liens inferior to that of plaintiff so that their rights may be extinguished in the same action in which plaintiff's lien is foreclosed.

Thus, although we conclude that the district court correctly found an implied grantor's lien in favor of plaintiff on the facts of this case, remand is necessary in order that the district court may hold further proceedings to establish the priority of lienholders. Should the court determine that any person holds a lien inferior to that of plaintiff, that lienor must be joined in the action pursuant to 28 V.I.C. § 532. If all other lienors are found to hold rights superior to those of plaintiff, the court may exercise the discretion implicit in the statute to make the sale subject to the rights of such claimants or in satisfaction of those rights in order of priority.

Since defendant has challenged the entry of the foreclosure order solely on the basis of nonjoinder of other lienors, we need not reach other possible alternatives to immediate foreclosure except to note that under 28 V.I.C. § 538 (1962) defendant may forestall execution upon the property by paying into court the amount of the judgment. We also do not treat the question of the appropriateness of the award of attorney's fees since it is our understanding that defendant requested reduction only if the grantor's lien were voided on appeal.

The case will be remanded for further proceedings consistent with this opinion.