901 So.2d 282 (2005)
Jordan CICORIA, Anthony Cicoria, et al., Appellants,
v.
Mohammed A. GAZI, Raees I. Gazi, et al., Appellees.
No. 5D04-753.
District Court of Appeal of Florida, Fifth District.
April 29, 2005.
*283 Patrick B. Calcutt and Kathleen M. Calcutt of Calcutt & Calcutt, P.A., St. Petersburg, for Appellants.
Mary L. Taylor, of The Law Offices of David R., Carter, P.A., New Port Richey, for Appellee Mohammed A. Gazi.
No Appearance for Appellee Raees I. Gazi, et al.
SHARP, W., J.
Jordan Cicoria, Anthony Cicoria, Terry Kasberg and George Scribano, purchasers of two parcels of property[1] located in Hernando County at a foreclosure sale, appeal from the circuit court's order which vacated its summary final judgment of foreclosure, pursuant to Mohammed Gazi's (the *284 mortgagor's)[2] timely filing of his objection to sale and motion to vacate the judgment. Following the rendition of the set-aside order, Gazi's right to redeem the property was temporarily reinstated and he satisfied the mortgage debt in full.[3] The issue in this case is whether the court abused its discretion in setting aside the foreclosure sale under the circumstances of this case.[4] We reverse.
The record suggests this is a highly unusual foreclosure case. On June 21, 2000, Bank of America filed a complaint to foreclose the mortgage, which had been executed on January 24, 1997, by the Gazis. Both of the Gazis have very distinctive signatures. The process server filed an affidavit stating that on July 28, 2000, he had personally served copies of the summons, notice of lis pendens, and complaint and exhibits on Raees Gazi, at 3638 Commercial Way, Spring Hill, Florida, 34607, her place of business. At that time, Raees, a medical doctor, maintained her medical clinic in a small shopping center owned by the Gazis, although 3638 was not the correct number for her office. The process server also averred that he had spoken with Mohammed Gazi on the telephone and that he had given the server permission to serve him via his wife.
The Gazis were served by mail with all of the notices, orders, and pleadings in this case at the address 3638 Commercial Way, except for one instance late in the proceedings. No mailings were returned.
The trial court sent out a succession of orders scheduling a case management conference in this case, dated January 24, 2001, July 6, 2001, August 20, 2001. The Bank filed a "Joint Motion To Continue Case Management Conference," signed only by the attorney for the Bank. The motion asserts:
1. The parties are in constant communication with each other regarding a proposed settlement of the above-referenced case.
2. The parties believe in good faith that they are near settlement wherein the Defendant and Plaintiff will enter into a repayment plan to cure the indebtedness due and owing under the note and mortgage held by Plaintiff.
3. The Defendant is currently providing Plaintiff with certain financial information to be used in drafting a proposed repayment plan.
Based on this joint motion, the court rendered an order which continued the case management conference until December 10, 2001. It recited, "This case, having come before the Court upon Plaintiff's and Defendant's Joint Motion to Continue Case Management Conference, and the Court being fully advised in the premises...." Later, the court reset the conference for January 23, 2002. Whether these conferences were ever held is unclear, but the court set the cause for a non-jury pre-trial conference and trial, to be held April 11, 2002.
The trial was apparently never held. In its place appears a Joint Stipulation for Repayment, date stamped as filed in the court on May 10, 2002. It was apparently signed by both of the Gazis and the date *285 printed above the signatures (different from the typing used on the document) is March 15, 2002. Their signatures look very similar to those on the mortgage and note. The attorney for the bank also signed the document, dating his signature April 30, 2002. Based on this document, the court entered an Order Approving Joint Stipulation for Repayment.
The Joint Stipulation for Repayment is a typical forbearance agreement. The Bank agreed not to proceed further with foreclosure, in exchange for the mortgagors' agreement to fully perform terms of the repayment schedule set forth in the document. Some of the dates in the agreement were altered, apparently by the Gazis, which extended times for payment and performance in their favor. The changes are initialed by the attorney for the Bank. Print at the top of the document indicates it was faxed from the Bank attorney's office March 14, 2002, to the Gazis.
The document contains significant admissions on the part of the Gazis. They admit the mortgage is in default, that they have no valid defense in law or equity, and that they were validly served with process on July 28, 2000. The document recites: "[T]hat by execution of this stipulation [they] submit themselves to the jurisdiction of the Court and waive any objection to service of process or the Court's jurisdiction of the foreclosure action."
Paragraph 8 provides:
Should any default of this agreement occur, plaintiff may at its option terminate this agreement to forebear by proceeding with foreclosure. By execution of this stipulation Defendants specifically consent to the entry of judgment ex parte, sale of the subject property by the Clerk of the Circuit Court and issuance of a Certificate of Title to the successful bidder at the foreclosure sale should a default occur. (emphasis supplied)
Based on this Joint Stipulation, the attorney for the Bank filed a motion to hold the case in abeyance. The motion alleges that the Bank and the Gazis entered into the Joint Stipulation, and that pursuant to their agreement, the Gazis have approximately nine months to bring the mortgage debt current. The court accepted the allegations contained in the motion and by its order dated May 9, 2002, stayed the case.
Less than nine months later, the Bank filed a Motion to Reinstate Case as Pending. The motion is dated October 23, 2003. It alleges the mortgagors defaulted under the repayment agreement and that the Bank must now proceed with foreclosure. Service of the motion is shown on the Gazis at the 3638 Commercial Way address, and on Mohammed at 123 East Orange Court, Parkville, MD. 21234.
Accordingly, the court ordered on October 28, 2003, that this case be returned to an active status. Service of this order on the Gazis was certified as having been mailed to both the Spring Hill and the Parkville Maryland addresses. Based on the Joint Stipulation, which permitted the Bank to proceed to obtain a final summary judgment ex parte, the Bank filed an Affidavit of Default and obtained a Final Summary Judgment of Foreclosure. Copies of these documents were certified as having been mailed to the Gazis via the Spring Hill address. The judgment provided that the public sale would be held December 11, 2003, "[A]nd upon the Clerk filing the Certificate of Sale, all persons shall be forever barred and foreclosed of any and all equity or right of redemption in and to the above-described property."
The sale took place on December 11, 2003, and appellants bid $241,000.00 for the property. There is no claim or allegation that this was a low bid, much less such *286 a grossly low one as to indicate a mistake or accident. The Gazis simply did not appear.
However, represented by a Florida attorney, Mohammed Gazi timely filed an affidavit in support of an objection to sale and motion to vacate the final judgment. He raised various issues which, if true, present serious ethical problems for the manner in which this foreclosure proceeding was conducted.
First, he alleged the address 3638 in Spring Hill was an unoccupied space and that in 2000, his wife was not practicing at the clinic located at 3616 Commercial Way. He denied his wife ever told him about the lawsuit or that he gave permission to serve him via his wife. He also alleged that his residence in 2000 was in Maryland and he has resided at 123 Orange Court, Parkville, MD since January 2001 and his wife resided there with him since 2000 until her death in 2003.
Second, he alleged "last week a former patient of my wife contacted us and advised that our property had been sold at a foreclosure sale. That was the first notice that I had received of this litigation." He further alleged he "never received any of the papers in the file, including but not limited to, all the papers or pleadings referencing copies to me and my deceased wife at 3638 Commercial Way, Spring Hill, FL 34607." He also denied ever receiving copies of the two pleadings noted above, which were addressed to his admitted, correct Maryland address.
Third, he alleged he never signed "the original" "Joint Stipulation for Repayment" and he was certain his wife had not signed it either. He alleged the first time he saw the Joint Stipulation for Repayment was when the attorney for the bank faxed it to him on October 30, 2003.
Appended to the Affidavit are two confusing exhibits. The first is a copy of a letter written by Mohammed Gazi to the Bank's attorney, David Hitchcock. It is dated September 3, 2003, and it is entitled Re: Case No. H-27-CA-2000-1482.
 Loan No. 17068920
 S & F No. 00-44341T
In the letter he references his prior requests for a summary regarding assessed interest rates for the loan, and payoff figures. If Gazi knew nothing about this foreclosure case, as he stated in his affidavit, until told by a former patient of his wife's after the foreclosure sale date was set, how could he have known the case number of the foreclosure proceeding, or September 3, 2003, as indicted by this letter, which was written almost two months before the case was returned to active status?
The second exhibit is a copy of a fax sent from the attorney for the bank to M. Gazi, on October 30, 2003. The message indicates, contrary to the affidavit, that Gazi was well aware of the mortgage foreclosure proceeding, or that someone has fabricated documents filed in the court, which the court accepted and acted on. The message states it is in regard to a "settlement agreement:"
Mr. Gazipursuant to our conversation earlier today, enclosed please find a copy of the joint stipulation for repayment we entered into last year. As we discussed, my client will be providing you with payoff figures shortly of the amount required to satisfy the mortgage indebtedness. You should also receive soon a copy of our motion for final judgment.
The motion filed by Gazi's attorney to vacate the final judgment presented various grounds:
1. Lack of personal service;

*287 2. The mortgagors never executed any `original' Joint Stipulation for Repayment and the original was not filed with the court.
3. Gazi had no notice of this pending litigation until after the sale, December 12, 2003; and no notice of the final summary judgment setting the sale date.
The court held a hearing which included Gazi, his attorney, the purchasers, and the attorney for the Bank. The Bank's attorney and Gazi's attorney announced they had agreed to set aside the final judgment in exchange for Gazi immediately satisfying the mortgage debt in full$199,921.41. However, if the court did not set the final judgment aside, the Bank reserved all defenses and did not agree that Gazi's allegations concerning lack of jurisdiction and notice were correct. The attorney for the Bank said:
I am not going to stipulate anything done wrong in the case. We're in total disagreement as to the facts of this case and our position is simply to let the Court rule as it may and not to take a position so to speak as to the validity or invalidity of the defendant's arguments.
The attorney for Gazi argued service was defective in this case, that the address in Spring Hill used for service of the initial pleadings and mailing of copies of subsequent pleadings and court orders, was one where neither Gazi ever lived or worked and that Mohammed Gazi had no notice of the sale date because the address used for mailing a copy of the final summary judgment was incorrect. She also questioned how the Joint Stipulation for Repayment ever got into the court file. On direct examination, Gazi denied ever receiving any papers or pleadings in this lawsuit, from the beginning, and he denied that he or his wife signed the Joint Stipulation. If he did, all issues concerning proper service and jurisdiction of the court are moot.[5]
The trial judge declined to address the issues of whether the Gazis were properly served, or whether they signed the Joint Stipulation. It determined to set aside the final summary judgment, because it contained a defective address for Gazi, and "[i]t's very possible Mr. Gazi did not have actual notice as required by the law, of the sale date."
Under the circumstances presented by the record in this case, we do not think the trial court addressed the key issues; whether M. Gazi was entitled to receive notice of the foreclosure sale date, because he was bound by the Joint Stipulation which waived it, upon default, and whether M. Gazi is entitled to equitable relief because of the conflicting record, which clearly suggests a lack of veracity and potentially unethical conduct, on the part of someone.[6]
It is well established that courts may exercise their discretion as courts of equity, to set aside foreclosure sales and allow mortgagors to exercise their statutory right of redemption where there has been some defect in the proceedings regarding notice of the foreclosure sale date, or other egregious matters, such as a grossly low bid by the purchaser and accident or mistake on the part of the mortgagor or an attorney representing the mortgagor, in failing to attend the foreclosure sale.[7]
*288 The right of a mortgagor to redeem, once protected by common law, is now governed by statute.[8] Currently that statute provides that the mortgagor may redeem property being foreclosed up until the sale date and the filing of the certificate of sale to a purchaser, unless the final judgment provides otherwise, which it does not in this case.[9] Thereafter, the mortgagor may file, within ten days after the filing of the certificate of sale, objections to the sale.[10] But these objections must be founded on matters which prompt a court of equity, as noted above, to act to protect the mortgagor from over-bearing conduct by others involved in the sale process, or an irregularity in the notice process which prevented the mortgagor from exercising the right of redemption in a timely fashion. If no such circumstances are clearly established, then the rights of the successful bidders at the foreclosure sale should be upheld.[11]
In this case, there are too many unresolved fact issues and too many potentially unanswered unethical questions which bear on whether the Gazis should be entitled to relief by a court of equity. A party seeking justice in a court of equity must have "clean hands." Here someone has misled the court.
Did the Gazis execute the Joint Stipulation which makes service of process issues jurisdiction of the court, and notice of the foreclosure sale moot?[12] The suggestion that the Gazis had to sign an "original" Joint Stipulation, which was filed with the court, is incorrect. Signing and filing faxed documents is sufficient in this case.[13] But Mohammed Gazi, at the hearing, denied even signing a faxed document. If he did not, someone has committed fraud on the court. If he did and if his other allegations are false, he is not entitled to equitable relief.[14]
We reverse and remand to the trial court to hold a hearing and resolve these factual and ethically disturbing issues.
REVERSED and REMANDED.
SAWAYA, C.J., and PLEUS, J., concur.
NOTES
[1] The properties are lots in residential subdivisions, which contain dwellings that were rented to various occupants and were not occupied at any time relevant to these proceedings by the Gazis.
[2] At the time the mortgage was executed in favor of Bank of America, the mortgagee, Mohammed and his wife Raees, were jointowners of the mortgaged property. However, Raees died before the conclusion of the foreclosure proceedings and the record established that Mohammed was the sole owner at the time of the sale.
[3] See JRBL Development, Inc. v. Maiello, 872 So.2d 362 (Fla. 2d DCA 2004).
[4] See O'Neal v. McElhiney, 172 So.2d 492 (Fla. 1st DCA 1965); 8 Fla. Jur.2d, Judicial Sales § 26 (2005).
[5] See De Ardila v. Chase Manhattan Mortgage Co., 826 So.2d 419 (Fla. 3d DCA 2002).
[6] 8 Fla. Jur. 22, Judicial Sales § 26 (2005).
[7] See Ingorvaia v. Horton, 816 So.2d, 1256 (Fla. 2d DCA 2002); Kerrigan v. Mosher, 679 So.2d 874 (Fla. 1st DCA 1996); Bennett v. Ward, 667 So.2d 378 (Fla. 1st DCA 1995); Bit-O-Sweden, Inc. v. Kittredge, 566 So.2d 364 (Fla. 5th DCA 1990); C.J. Van Delinder v. Albion Realty & Mortgage, Inc., 287 So.2d 352 (Fla. 3d DCA 1974); Subsaro v. Van Heusden, 191 So.2d 569 (Fla. 3d DCA 1966).
[8] Saidi v. Wasko, 687 So.2d 10 (Fla. 5th DCA 1996); Emanuel v. Bankers Trust Co., 655 So.2d 247 (Fla. 3d DCA 1995).
[9] § 45.0315, Fla. Stat. See Cueto v. Manufacturers & Traders Trust Co., 791 So.2d 1125 (Fla. 4th DCA 2000); Indian River Farms v. YBF Partners, 777 So.2d 1096 (Fla. 4th DCA 2001).
[10] § 45.031(4), Fla. Stat. (2000).
[11] See Cueto v. Manufacturers & Traders Trust Co., supra; Sulkowski v. Sulkowski, 561 So.2d 416 (Fla. 2d DCA 1990).
[12] See First Wisconsin National Bank of Milwaukee v. Donian, 343 So.2d 943 (Fla. 2d DCA 1977).
[13] § 668.50, Fla. Stat.; Charles W. Ehrhardt, Florida Evidence (2004). See Tillman v. Smith, 472 So.2d 1353 (Fla. 5th DCA 1985).
[14] Fla. Jur.2d, Judicial Sales, § 67. See Storm v. Allied Universal Corp., 842 So.2d 245 (Fla. 3d DCA 2003); Snow v. Ruden, McClosky, Smith, Schuster & Russell, 896 So.2d 787 (Fla. 2d DCA 2005).